**Orn TEAL and Myrtle E. Teal, Plaintiffs-Respondents,**

v.

**William D. LEE and Dolly J. Lee, Defendants-Appellants.**

No. 34816.

Missouri Court of Appeals, St. Louis District, Division 1.

Feb. 19, 1974.

Rehearings Denied March 8, 1974.

Albrecht & Homire, R. Forder Buckley, St. Louis, for defendants-appellants.

Sherwood R. Volkman, St. Louis, Mo., for plaintiffs-respondents.

KELLY, Judge.

This appeal from the judgment of the Circuit Court of Jefferson County decreeing the rescission of the sale of residential real estate and consequential damages to the plaintiffs,[1] the purchasers, raises the following points:

1. The trial court erred in entering its decree which was based on a finding of fact by the trial court that the defendants misrepresented the existence of an easement for a private roadway, when (a) the easement was a matter of public record in the Recorder of Deeds office in Jefferson County, Missouri; (b) the trial court found that the real estate agent for the defendants read the legal description, including the reference to the roadway easement, to the plaintiffs prior to closing and the defendants failed to understand its legal effect; and that the trial court further

---

1. The parties shall be referred to herein as plaintiff and defendant, the positions they occupied in the trial court.

erred in finding that the easement could not be fenced.

2. The trial court erred in granting rescission because the plaintiffs did not make a timely tender of the property and therefore were guilty of laches;

3. The trial court erred in granting rescission because the evidence failed to show damages sustained by the plaintiffs; and

4. The trial court erred in entering a judgment which was inconsistent in that it granted the plaintiffs rescission and also damages for breach of contract.

Plaintiffs' First Amended Petition[2] alleged that the defendants, intending to deceive the plaintiffs and to induce them to purchase the defendants' real estate and the improvements thereon, through their agent, wilfully and maliciously, jointly and severally, made false representations that the said property was not encumbered by any easement, whereas said property was encumbered by a 17 foot roadway easement along the East line of the tract of land. That the defendants knew that these representations were false; that the plaintiffs had a right to rely on these representations, that they did rely on them as true, and that they were at all times ignorant of any easement on the said property. That the defendants, when they made said representations, knew they were false. That the plaintiffs were thereby induced to purchase the realty in reliance upon these false representations to their damage. That plaintiffs, when they learned that the property was so encumbered by an easement sought to rescind the sales contract and return the property to the defendants. They prayed the court to rescind the purchase and sale contract and to require the defendants to return the purchase money to the plaintiffs, together with their expenses for improving the property in an amount of $3,500.00, and for $25,000.00 exemplary damages.

Defendant's Amended Answer to Plaintiffs' First Amended Petition admitted that at all times mentioned in the plaintiffs' First Amended Petition, Donald E. Burian was the agent, servant and employee of the defendants; that at the time of the filing of the plaintiffs' First Amended Petition the defendants were residents of the State of Virginia and that personal service upon them was authorized by virtue of Sec. 506.500 RSMo 1967, V.A.M.S., and denied all other allegations contained therein. As a defense to plaintiffs' cause of action, the defendants alleged that the plaintiffs were not entitled to the relief prayed because they "do not have clean hands" and further that the plaintiffs were guilty of laches.

With the pleadings in this posture, the cause came on for trial. The evidence of the respective parties was in conflict on the issues framed by the pleadings. However, during the course of the trial the main bone of contention centered around whether the plaintiffs could fence-in their entire yard. It was the plaintiffs' position that they had, on many occasions, inquired of the real estate salesman, a Mr. Busch, whether there was an easement on the land which would preclude them from fencing in the yard, because they were interested in purchasing property only if it could be fenced "to keep dogs and children out," as they desired to plant a vegetable garden, a strawberry patch and fruit trees all the way across the back of the yard. They also inquired whether there were any "restrictions" which would prevent them from fencing the yard. Plaintiffs' evidence was that, on a number of occasions, Mr. Busch and Mr. Lee stated that there was neither an easement nor any restrictions which would preclude them from fencing the entire yard. On another occasion, after the contract of sale was executed, Mrs. Teal and her daughter visited the property and Mrs. Lee advised her that there were no easements or restrictions existing with re-

---

2. Plaintiffs' First Amended Petition was filed in two counts; however, Count I was dismissed without prejudice on the day of trial when plaintiffs were required to elect and trial proceeded on Count II of the First Amended Petition.

spect to the property. On October 25, 1969, at the closing, the plaintiffs made the same inquiry of Mr. Burian; he not only denied the existence of any easement or other restriction but even drew a diagram showing how the property could be fenced. Plaintiffs were corroborated by the testimony of their son, who was with them on one occasion when such representations were made, and by the Masters, a couple who were friends of the plaintiffs, and who were also present on the premises on one occasion prior to the closing date.

The defendants' evidence was that they, Mr. Burian and Mr. Busch were all aware of the fact that an easement existed on the east end of the property and Mr. Busch testified that he informed the plaintiffs on the occasion of their first visit to the premises that there was an easement across the land from the garage to a utility pole on the premises, and that he did not know the exact nature or dimensions of the easement nor who the owner of the easement was, and for that reason did not give them any information in those respects. Each of the defendants' witnesses denied that the plaintiffs inquired about any restrictions on fencing. Mr. Burian testified that on October 25, 1969, the sale was closed at his office and, according to his usual business practice in handling closings, he read the relevant documents to the plaintiffs. Among those documents which he read to the plaintiffs were the Warranty Deed and the Certificate of Title, and each contained the language: "Subject to Easement for roadway 17 feet wide along the East line of the above tract" and "subject to restrictions, easements and conditions now of record, if any." He arranged for the recording of the deed and subsequently mailed the warranty deed to the plaintiffs. The plaintiffs acknowledged that they received the warranty deed on the 7th of November, 1969, but testified that they placed it in a strong box without reading it.

On November 15, 1969, plaintiffs took possession of the property and, according to their testimony, they first became aware of the existence of the roadway easement when they attempted to fence their yard sometime in early February, 1970. Construction of the fence was halted by a Mr. Miller who advised plaintiffs that he was the owner of a 17 foot roadway easement across their property which could not be fenced. Mrs. Teal contacted Mr. Burian sometime in March, 1970, and inquired about the easement; Mr. Burian informed her that there was an easement, and Mrs. Teal asked him to contact Mr. Miller and see if he would permit the plaintiffs to put a gate across the easement. Mr. Burian contacted Mr. Miller, inquired if he would permit the plaintiffs to put gates across the easement, was advised by Mr. Miller that he would not grant such permission, and reported this information back to Mrs. Teal. When so informed, Mrs. Teal advised Mr. Burian that the plaintiffs wanted their money back because they were not interested in the property if it could not be fenced.

The trial court made findings of fact and conclusions of law at the time of entry of judgment. Among other factual findings, the trial court found that through a newspaper ad, the plaintiffs contacted Mr. Ed Busch, an employee of Don Burian, a realtor and agent for the defendants. That the plaintiffs met with Mr. Busch on a number of occasions, and on at least one of these occasions the defendants were present. That the plaintiffs consistently told Mr. Busch that they wanted to purchase premises that could be completely enclosed by a fence, in order to be able to raise a garden, an orchard, and keep out children and dogs. That Mr. Busch, in the presence of defendant, William Lee, *advised plaintiffs that a certain portion of the lot was subject to an easement between a garage and a utility pole*, but, that he did not state (1) the measurement of the easement, (2) the type of easement, (3) the name of the owner of the easement, nor (4) that the easement would preclude the plaintiffs from enclosing the entire lot by fence. That defendant William Lee made

no statement to the plaintiffs about the easement, but rather relied on Mr. Busch to make said statement. That when the defendants had purchased the premises Mr. Busch represented the seller, and Mr. Busch and the seller pointed out the easement to the defendants who thereafter obtained legal counsel and sought unsuccessfully to have the easement released. That during the course of the negotiations preliminary to the execution of the sales contract, the plaintiffs wanted Mr. Busch's assurances that the premises could be fenced and were not subject to restrictions against fencing; that Mr. Busch gave plaintiffs such assurance, and even stated to the plaintiffs that they could hook-up their proposed fence to an existing fence, but that at no time did Mr. Busch state to the plaintiffs that the easement was a 17 foot roadway easement in favor of Mr. Miller, *which easement would prevent the plaintiffs from enclosing the entire premises by fence. "Bush (sic) was not aware during the negotiations with the plaintiffs of the type of easement, its size, nor the name of the owner."*

The trial court further found that at the closing Mr. Burian read to the plaintiffs all of the documents involved in the sale and that portion of the warranty deed and the certificate of title which made direct reference to the easement; that upon the conclusion of reading the documents Mr. Burian inquired if the plaintiffs had any questions and they responded that they did not. That the plaintiffs did not retain in their possession the originals or any copies of the documents, but that the certificate of title, etc., was turned over to the lending institution by Mr. Burian that same day and he also recorded the warranty deed in the recorder's office and some days later said warranty deed was mailed to the plaintiffs by the Recorder of Deeds. That plaintiffs placed the warranty deed in their safety deposit box without reading it. That the plaintiffs would not have purchased the property "had they been aware that the premises were subject to a seventeen foot roadway easement in favor of Miller which

could not be enclosed." That "Bush (sic) neglected to reveal the specific easement on these premises and had he done so the plaintiffs would not have purchased same," and that "The failure of Bush (sic) and of the Defendants to disclose the existence of a seventeen foot roadway easement which could not be enclosed by fence, in favor of Miller, constituted a failure to disclose a very material fact." With respect to the "closing" the trial court found: "At the closing in Burian's office on October 25, 1969, the Plaintiffs were basically concerned with the financial aspect of the closing and failed to understand the significance of the easement as read to them by Burian from the legal description."

Rescission is an action in equity and therefore on appeal is to be reviewed *de novo* on the record made by the trial court. The reviewing court must make its own findings of fact, draw its own conclusions of law and render or direct the rendition of such judgment as equity may require giving proper deference to the findings and conclusions of the trial judge, where, because of conflicting testimony, a determination of the credibility of the witnesses is involved. Mills v. Keasler, 395 S.W.2d 111, 113[2] (Mo.1965).

This is a case sounding in fraud through affirmative misrepresentations. The elements of a cause of action in fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity or his ignorance of the truth; (5) the speaker's intent that his statement be acted upon; (6) the hearer's ignorance of the falsity of the statement; (7) his reliance on the truth of the statement; (8) the hearer's right to rely on the statement; and (9) the hearer's consequent and proximate injury. Ackmann v. Keeney-Toelle Real Estate Co., 401 S.W.2d 483, 488[4] (Mo. banc 1966).

The critical evidence from which the truth or falsity of the representations can be determined is nowhere in the record in this case. Although the best evidence of

what the easement provides would be the easement itself at no time was the actual easement referred to in the warranty deed and the certificate of title introduced into evidence by either party to this suit. The existence of a 17 foot wide roadway easement recited in the warranty deed and the certificate of title does not prove that the plaintiffs may not fence the right-of-way. It is obvious from a look at the photographic exhibits offered into evidence that the roadway was not in daily use. Furthermore, some three feet of the garage encroaches upon the easement.

In general the lawfulness of a fence or gate across a right-of-way is a question of fact. In determining whether or not a fence or gate may be erected across a right-of-way the courts take into consideration a number of factors. 52 A. L.R.3rd—Anno., Right to Maintain Fence or Gate Right of Way, Sec. 2[a] pp. 15–20 (1973). In those instances where the terms of the easement are reduced to writing the terms of the grant would, of course, prevail. If, however, exclusion of the erection of a fence or gate across a right-of-way is not specifically set out in a grant of easement, the court will then consider the following factors; 1) the purpose for which the grant was made; 2) the intention of the parties as gleaned from the circumstances surrounding the grant; 3) the nature and situation of the property; and 4) the manner in which the easement has been used. L. A. Jones, A Treatise on the Law of Easements, Sec. 400, p. 319 (1898); G. W. Thompson, Commentaries on the Modern Law of Real Property, Sec. 431, pp. 725–726 (1961); 25 Am.Jur.2d Easements and Licenses, Sec. 90–91, pp. 496–498 (1966); 73 A.L.R. Easements, Sec. 50, pp. 778–792 (1931); 28 C.J.S. Easements § 98, pp. 780–783 (1941).

The mere fact that Mr. Miller contended that the easement precluded the erection of a fence or gate is not, in our opinion, any evidence that the plaintiffs could not legally have fenced the yard of the property purchased; nor is there any evidence that the defendants representations that the yard could be fenced was a fraudulent misrepresentation based upon actual knowledge or recklessly made.

We hold, therefore, that on the basis of the evidence before it, taken with its finding of fact that the plaintiffs were told of the existence of an easement prior to the sale, the trial court was without sufficient probative evidence to make a finding that the defendants or their agent misrepresented to the plaintiffs that the yard of the property sold by the defendants to the plaintiffs could be fenced. Nor are we in position to render such a judgment as equity may require in the absence of said evidence.

However, since we perceive that the plaintiffs might be able to adduce some evidence which may resolve the issues between the parties, we reverse and remand for further proceedings not inconsistent with this opinion.

DOWD, C. J., and SIMEONE, J., concur.