Paul B. MAASEN and Cindy Maasen,
Plaintiffs/Appellants,

v.

Peter M. SHAW,
Defendant/Respondent.

No. ED 82750.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 27, 2004.

Douglas P. Dowd, James R. Dowd, Laura G. Lumaghi, Dowd & Dowd, P.C., St. Louis, MO, for appellants.

Joel B. Eisenstein, St. Charles, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Plaintiffs, owners of a servient estate, filed a lawsuit seeking to enjoin defendant, owner of the dominant estate, from using a fifty-foot non-exclusive easement across the servient estate for purposes other than ingress and egress on a fifteen-foot roadway to defendant's property. Defendant filed a counterclaim to recover damages. The trial court enjoined defendant's use of all-terrain vehicles on the non-roadway portion of the easement, but denied plaintiffs' requests that defendant be enjoined from widening the roadway, paving the roadway, cutting down trees on the non-roadway portion, cutting grass on the non-roadway portion, or parking construction and personal vehicles on the easement, and held that defendant could widen the roadway at his expense within the fifty-foot easement. The trial court also entered judgment in plaintiffs' favor on defendant's counterclaim. Plaintiffs appeal.

On appeal plaintiffs assert that the trial court erroneously declared the law in that it allowed the defendant to use and control the servient estate in ways not recognized by Missouri law. They also claim the court erred in denying plaintiffs' motion for leave to amend their petition to request a reduction in the size of the easement, and in granting defendant the right to expand and pave the roadway up to fifty feet. Defendant has not filed a respondent's brief. We reverse in part and affirm in part.

*FACTUAL AND PROCEDURAL BACKGROUND*

The determinative facts are not disputed. O.H. Hesterberg & Sons, Inc., conveyed a forty-acre tract of land, in St.

Charles County, Missouri, along with a thirty-three foot wide easement[1], to Roger Karrenbrock and Janet Karrenbrock on November 30, 1993. On June 2, 1994, Mr. and Mrs. Karrenbrock conveyed twenty acres of this tract (north parcel) to David F. Vetor and Marianne C. Vetor by general warranty deed. The deed also conveyed "[a] non-exclusive easement 50 feet wide," which ran along the east boundary of the remaining twenty acres of the original tract (south parcel). This easement, which was 670 feet long, provided access from the north parcel across the south parcel to the thirty-three foot easement that provided access to Oberhelman Road. On October 17, 1994, Mr. and Mrs. Karrenbrock conveyed the south parcel to plaintiffs, Paul B. and Cynthia A. Maasen, subject to the non-exclusive fifty-foot easement across the south parcel. Plaintiffs built a house on the south parcel. In 1995, Mr. Vetor and Mr. Maasen constructed a fifteen-foot wide gravel road on the easement, sharing the cost. This road ran approximately parallel to the eastern boundary of the easement. After the road was constructed, it was used as a roadway for travel over the easement. The remainder of the easement was left in its natural state. The gravel roadway is the only access to the north parcel, and is also used by plaintiffs for access to their home on the south parcel.

Mr. and Mrs. Vetor conveyed the north parcel to a trustee by deed of trust to secure payment of a note. They defaulted, and the trustee sold the north parcel to the lender by a trustee's deed. On November 2, 1999, the lender conveyed the north parcel by general warranty deed to defendant, Peter M. Shaw.

Until April, 2001, the non-exclusive fifty-foot easement had not been used for any purpose other than ingress and egress. After April, 2001, defendant began mowing the non-roadway portion of easement on the south parcel, and stored shrubs, trees, and vehicles in the easement area in connection with landscaping the north parcel. Defendant's family and guests also drove all-terrain vehicles on the non-roadway portion of the easement. Defendant parked his personal vehicles on the easement, and allowed construction vehicles engaged in construction projects on the north parcel to park on the non-roadway portion of the easement. Mr. Maasen testified that defendant threatened to cut down a tree on the non-roadway portion of the easement, and also threatened to widen the gravel roadway by twenty-five feet. Defendant testified that he wanted to clean up the non-roadway portions of the easement by removing brush, debris, gravel, and logs, mowing and planting grass, and landscaping in order to enhance the property and make it safer. Defendant also testified he wanted his children and guests to continue to drive all-terrain vehicles on the non-roadway portions of the easement.

Plaintiffs filed a petition for injunction, requesting that defendant be enjoined from widening the roadway, paving the roadway, cutting trees on the easement or using the easement for any purpose other than ingress and egress as a roadway to his home. After a bench trial, the court entered its findings of facts, conclusions of law, and judgment. It concluded: "When a grantee's rights are designated nonexclusive, it is anticipated that an easement area will serve multiple purposes." It further concluded:

---

1. The deed also purported to include a seventeen feet wide easement that would combine with the thirty-three foot easement to make a fifty-foot easement for roadway and utility purposes that would provide access from the forty-acre tract to Oberhelman Road. However, based on expert testimony that the seventeen-foot easement was invalid, the trial court found the easement was thirty-three feet.

It follows that Shaw may widen the existing approximate 15–foot roadway, at his expense, as long as the roadway remains within the existing 50–foot easement. Shaw may also maintain the property within the easement, including cutting and trimming of trees, grass and other plants and bushes and may clean the easement. Further, Shaw may use the easement to reasonably and temporarily park personal vehicles or construction vehicles, when necessary for repair or improvement to Shaw's property, on the unpaved portion of the easement, provided that no portion of the paved roadway is blocked.

The court enjoined defendant only from using the non-roadway portion of the easement for recreation by traveling on it with all-terrain vehicles.

We review the judgment in an injunction action under the standard set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id. See Macios v. Hensley*, 886 S.W.2d 749, 752 (Mo.App.1994).

1. *Rights of Use in Non-exclusive Easement*

■ For their first point plaintiffs contend that the trial court erred in holding that a "non-exclusive easement" means that the area subject to an easement will serve "multiple purposes" and, as a result, the dominant owner can use the easement property for parking and storage and can cut trees, bushes and grass on the easement. We agree.

■ The trial court misdeclared the law in concluding that the conveyance of a "non-exclusive" easement meant that the easement area would serve "multiple purposes," and thus allow the servient owner

to park and store items on the non-roadway portions of the easement and to cut trees and other vegetation. The term "non-exclusive," in reference to an easement, does not refer to the purposes for which the dominant owner may use the easement, but to the servient owner's right to use the easement. When a grantor conveys a "non-exclusive" easement, the servient owner retains the privilege of sharing the benefits conferred by the easement. *Henley v. Continental Cablevision*, 692 S.W.2d 825, 827 (Mo.App.1985). In contrast, an "exclusive" easement refers to the exclusion of the servient tenement from participation in the rights granted to the dominant owner. *Id.* at 828.

■ This case raises the issue of what uses a dominant owner can make of the land subject to an easement when the deed does not specify either the purpose of or the uses for the easement, and it requires application of the doctrine of "unlimited reasonable use." When an easement is granted in general terms without restrictions on use, the easement is one of unlimited reasonable use. *Missouri Public Service Company v. Argenbright*, 457 S.W.2d 777, 783 (Mo.1970). "Under the doctrine of unlimited reasonable use, the scope of an easement unspecified in a grant is regarded as unlimited insofar as it is reasonable in relation to the object of the easement." 28A C.J.S. *Easements* Section 160 (1996).

■ Thus, to determine reasonable use, we must first establish the scope or purpose of the easement. By definition, an easement is "the mere right of a person to use for a definite purpose another [person]'s land in connection with his [or her] own land." *Mahnken v. Gillespie*, 329 Mo. 51, 43 S.W.2d 797, 800–01 (1931). An easement "is not the complete ownership of land with the right to use it for all lawful purposes perpetually and through-

out its entire extent," but, instead, is a right that extends "only to one or more particular uses." *Farmers Drainage Dist. v. Sinclair Refining Co.*, 255 S.W.2d 745, 748 (Mo.1953). *See also Earth City Crescent v. LAGF Associates–Mo*, 60 S.W.3d 44, 46 (Mo.App.2001); *Baum v. Glen Park Properties*, 660 S.W.2d 723, 726 (Mo.App. 1983) (*Baum I* ); *Kissinger Private Levee System v. Mackey*, 624 S.W.2d 64, 69 (Mo. App.1981).

In this case the conveyance of the easement did not specify the purpose of the easement. Although this omission does not affect its validity, *Hoelscher v. Simmerock*, 921 S.W.2d 676, 679 (Mo.App. 1996), purpose is critical in determining the full scope of use to be made of the easement. This is because an easement's use is limited to the purposes for which it was created. 28A C.J.S. *Easements* Section 159 (1996).

■ The omission of purpose makes the conveyance incomplete or ambiguous on its face, and therefore extrinsic evidence may be used to determine the parties' intention. *Fisher v. Miceli*, 291 S.W.2d 845, 848 (Mo. 1956); *Badger v. Hill*, 404 A.2d 222, 226 (Me.1979). The trial court did not address the parties' intention in its written findings, but orally found, at the conclusion of the trial, that the reason the easement was granted was "to afford an access to the parcel." This finding is supported by the record. To determine the purpose of an easement, the court can consider the circumstances surrounding the creation of that easement. 28A C.J.S. *Easements* Section 159. In considering the scope of an easement, the court may consider its location, and how it was previously used. *Hoelscher*, 921 S.W.2d at 679. In this case the easement was created when Mr. and Mrs. Karrenbrock carved out the north parcel of their forty-acre tract, which parcel would have been landlocked in the absence of an easement providing access.

The easement conveyed consisted of a narrow strip of land running across another's property which provided access to another easement, that gave access to a public road. Immediately after the north and south parcels were conveyed, the grantees put a gravel road on the easement and, as the trial court specifically found in its written findings, the dominant owners and their successors used it solely for egress and ingress to the north parcel until April, 2001. These circumstances support the conclusion that the parties intended the easement to provide right of passage, ingress and egress, from and to the thirty-three foot easement that accesses Oberhelman Road, across the servient estate to the dominant estate. *See Copanas v. Loehr*, 876 S.W.2d 691, 695 (Mo.App.1994).

■ Having determined that the purpose or object of the easement was to create a right of ingress and egress, or a right-of-way, to the dominant estate, we next apply the "reasonable use" analysis to determine the dominant owner's rights of use of the right-of-way. An easement created for egress and ingress gives a right of passage, and it allows the dominant owner unlimited reasonable use for ingress and egress. Whether an additional use can be made of an easement depends on whether the additional use represents only a change in the degree of use, or whether it represents a change in the quality of the use. *Macios*, 886 S.W.2d at 752. If the change is in the quality of use, it is not permissible, because it would create a substantial new burden on the servient estate. *Id.* Any doubt concerning an easement's scope should be resolved in favor of the servient owner's free and untrammeled use of the land. *Robert Jackson Real Estate Co. v. James*, 755 S.W.2d 343, 346 (Mo.App.1988).

■ In *Macios*, we considered whether an easement for ingress and egress to a lake included a right to dock boats in the

easement area. 886 S.W.2d at 752. We held that docking boats was a difference in *quality* of the use, because entering and leaving the water "involves going across the land in a transitory manner," whereas docking boats "involves placing an obstruction on the land." *Id.* For the same reason, a non-exclusive roadway easement allowing access to the dominant owner's tract of land also "involves going across the land in a transitory manner," whereas parking personal and construction vehicles in the easement area involves placing an obstruction on the land and is a difference in quality of use. Thus, parking on an access easement is not a reasonable use, whether on the non-roadway portion, or, as in *Schluemer v. Elrod,* 916 S.W.2d 371, 379 (Mo.App.1996), on the roadway itself.

■ Applying these principles, numerous cases in other jurisdictions hold that a right-of-way easement does not give the dominant owner a right to park in the easement, *Haviland v. Dawson,* 210 A.2d 551, 553 (D.C.1965); a right to store construction supplies and materials on the easement, *Aboud v. Bailen,* 289 Ky. 536, 159 S.W.2d 410 (Ky.1942); a right to store lumber, *Kaler v. Beaman,* 49 Me. 207, 209 (1860); or a right to store refuse or other material, *Friedman v. Keil,* 113 N.J.Eq. 37, 166 A. 194 (1933). Further, a right-of-way easement does not give the dominant owner a right to cut trees in a right of way that merely obstruct the view, and do not obstruct access. *Delaney v. Gurrieri,* 122 N.H. 819, 451 A.2d 394, 396 (N.H.1982).

■ The rights to store, park, plant, and construct on the non-roadway portions of the easement remain with the servient owner. "The owner of land burdened by an easement retains the right of full dominion and use of the land affected by the easement; he may control and use his property in any way that does not substantially interfere with the reasonable use of the easement by the easement hold-

er." *Earth City,* 60 S.W.3d at 46. Accordingly, in the absence of any contrary covenant, a servient owner may reasonably use that portion of its real property subject to an egress, ingress, and roadway easement for its own purposes, "up to the point where such uses substantially interfere with [the dominant owner's] reasonable use of the easement." *Id. See also* 25 Am.Jur. 2d *Easements and Licenses* Section 98 (1996 ed.). Permitted uses include parking, signage, and curbing, and the planting or removal of trees, sod and other vegetation. *Earth City,* 60 S.W.3d at 46; *Frain v. Brda,* 863 S.W.2d 17, 19 (Mo.App. 1993); *Baum I,* 660 S.W.2d at 726–27; *Schroer v. Brooks,* 204 Mo.App. 567, 224 S.W. 53, 57 (Mo.App.1920).

■ It is only when an obstruction interferes with the dominant owner's right of use that the dominant owner may remove it. *Kerr v. Jennings,* 886 S.W.2d 117, 125 (Mo.App.1994); 25 Am.Jur. 2d *Easements and Licenses* Section 101 (1996 ed.). Thus, the dominant owner may remove trees and earth that obstruct the easement roadway. *Kerr,* 886 S.W.2d at 125.

■ The trial court erred in concluding that defendant had a right to use the non-roadway portion of the easement for parking personal and construction vehicles, and erred in concluding that defendant had a right to clean the non-roadway portion of the easement and trim or cut down trees and vegetation on the non-roadway portion of the easement that did not obstruct the use of the roadway portion of the easement. "If the user of an easement exceeds his rights, either in manner or extent of use, he is guilty of trespass" to the extent of the unauthorized use. *Macios,* 886 S.W.2d at 752; 28A C.J.S. *Easements* Section 166 (1996). The servient owner may enjoin use outside the scope of an easement that is capable of repetition. *Macios,* 886 S.W.2d at 752. The trial court erred in denying plaintiffs'

request for injunctive relief to prevent defendant from engaging in these activities. Point one is granted.

### 2. *Motion to Amend Petition*

■ For their second point plaintiffs contend that the trial court erred in denying their motion to amend their petition by interlineation. They argue that this action worked a hardship on them, that the relief was already encompassed by their pleading, and that the amendment would not have caused an injustice to defendant.

Plaintiffs filed a Memorandum of Amendment by Interlineation two days prior to trial, seeking leave to add the following language to the petition:

> The existing 16–foot wide road is sufficient for the ingress and egress of defendant Shaw, and therefore, plaintiff requests this Court make a finding that 16 feet is adequate for the ingress and egress needed by defendant and reducing the easement from 50 feet to 20 feet.

The trial court denied the motion for leave to amend on the grounds that the motion requested a "different remedy than what was requested before, and not necessarily included in this petition."

After a responsive pleading has been served a pleading may be amended by leave of court and "leave shall be freely given when justice so requires." Rule 55.33(a). Under this rule, the decision to allow or disallow amendments to pleadings is within the trial court's sound discretion. *Lester v. Sayles,* 850 S.W.2d 858, 869 (Mo. banc 1993). Reducing the size of an easement conveyed in a deed presents a different issue than defining the uses that may be made of an easement. It was within the trial court's discretion to deny the motion to amend. Point two is denied.

### 3. *Widening of Roadway*

■ For their third point, plaintiffs challenge that part of the trial court's judgment that declared that defendant could widen and pave the fifteen-foot roadway at his expense, as long as the roadway remains within the existing fifty-foot easement. One of the actions plaintiffs sought to enjoin was the widening of the existing roadway in the easement. At trial Mr. Maasen conceded that some widening of the road, up to twenty or twenty-five feet, would be reasonable to allow two vehicles to pass. In light of this concession, the trial court could properly have denied plaintiffs' request for injunctive relief. However, we agree that the trial court erred in affirmatively declaring that defendant could widen the road by an indeterminate amount, because this issue was not raised by the pleadings, and the declaration was not supported by any evidence.

■ Plaintiffs' failure to establish their entitlement to injunctive relief prohibiting widening did not authorize a declaration that defendant could widen the roadway to any width within the easement. In the absence of an agreement, a dominant owner may only widen and locate a roadway within the fixed boundaries of a wider easement to the extent that is reasonable. *See Baum I,* 660 S.W.2d at 726–27; *Baum v. Glen Park Properties,* 692 S.W.2d 831, 833–34 (Mo.App.1985) (*Baum II*); and *RFS, Inc. v. Cohen,* 772 S.W.2d 713, 716–17 (Mo.App.1989). If defendant wanted a declaration of his rights with respect to widening the roadway, he was required to file a pleading and adduce evidence supporting his claim. Defendant did not plead a claim for a declaratory judgment under these authorities seeking a determination of whether, how much, and where he could widen the road. Further, defendant did not adduce evidence at trial with respect to his reasonable anticipated use of the roadway that would require widening of the road by any specific amount, and he adduced no evidence relating to the location of the widened area. In addition, the trial court sustained defendant's objections

to plaintiffs' evidence supporting a limitation on the width of the roadway.

The only evidence about widening was Mr. Maasen's concession that a twenty to twenty-five foot road would be reasonable. This evidence was sufficient to defeat plaintiffs' claim for injunctive relief, but it did not support the order allowing unlimited widening up to fifty feet. Under these circumstances, the only issue before the trial court on widening of the roadway was whether plaintiffs were entitled to injunctive relief; the issues of whether defendant could widen the road to any particular width and where the widening could take place were not before the trial court, and the trial court's declaration that defendant could widen the road anywhere within the fifty foot easement is void. *Beckwith v. Giles*, 32 S.W.3d 659, 665 (Mo.App.2000); *Dolan v. Dolan*, 540 S.W.2d 220, 221 (Mo. App.1976). Point three is granted.

*Conclusion*

The judgment of the trial court declaring that defendant could 1) widen the roadway anywhere within the fifty-foot easement, 2) cut, trim or remove trees, grass, plants, or other objects from the non-roadway portions of the easement that do not obstruct the roadway, and 3) park personal and construction vehicles on the non-roadway portion of the easement is reversed. The case is remanded for entry of an injunction prohibiting defendant from cutting, trimming, or removing trees, grass, plants, or other objects from the non-roadway portions of the easement that do not obstruct the roadway and from parking any vehicles on the easement. In all other respects, the judgment is affirmed.

GLENN A. NORTON, P.J. and MARY K. HOFF, J. concur.