James R. BEDARD, Trustee of the
James R. Bedard Revocable
Trust, Appellant,

v.

Nelson SCHERRER and Engla
Scherrer, Respondents.

No. WD 66541.

Missouri Court of Appeals,
Western District.

Oct. 31, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 19, 2006.

As Modified Dec. 19, 2006.

Dana James Macoubrie, Chillicothe, MO, for appellant.

Jack N. Peace, Trenton, MO, for respondent.

Before HOWARD, P.J.,
BRECKENRIDGE and NEWTON, JJ.

PATRICIA BRECKENRIDGE, Judge.

James R. Bedard, Trustee of the James R. Bedard Revocable Trust Agreement (hereinafter referred to as "Mr. Bedard"), appeals the trial court's judgment in favor of Nelson and Engla Scherrer on Mr. Bedard's petition for a permanent injunction. Mr. Bedard sought to enjoin the Scherrers from placing a padlocked gate across an easement, which restrained and hindered Mr. Bedard's access to his real estate. In denying Mr. Bedard's request for a permanent injunction, the trial court found that the Scherrers were entitled to construct and maintain a gate across the roadway on the easement and ordered the Scherrers to provide a key to Mr. Bedard for his use in accessing his property. On appeal, Mr. Bedard asserts that the trial court erred in permitting the Scherrers to maintain a locked gate on the easement because the gate installed by the Scherrers does not allow Mr. Bedard unrestricted use of his property. Because placement of a gate on the easement is outside the scope of the easement and creates a substantial new burden on Mr. Bedard's property, the trial court erred in failing to grant Mr. Bedard's request for injunctive relief. Accordingly, the trial court's judgment is reversed and the cause is remanded for entry of an injunction prohibiting the Scherrers from constructing and maintaining a gate across the easement.

**Factual and Procedural Background**

Sometime prior to June 2003, James Holcomb, attorney for the personal representative of the estate of Murray Morgan, conducted a sale on behalf of the estate and sold, by sealed bids, various parcels of land in Mercer County on behalf of the estate. Ronald and Mary Wheeler, Co-Trustees of the Mary Ellen Wheeler Revocable Trust, purchased the tract of land at issue in this case (the "Morgan property"). The Morgan property is bordered on three sides by property owned by Mr. Bedard. During the negotiations over the sale of the Morgan property, it was discovered that the property was landlocked. Therefore, Mr. Holcomb negotiated with Mr. Bedard's attorney, Dana Macoubrie, for access to the Morgan property.

The negotiations for an easement began when Mr. Holcomb contacted Mr. Macoubrie about Mr. Wheeler's desire to obtain an easement for ingress and egress over Mr. Bedard's property. With the initial negotiations, Mr. Holcomb informed Mr. Macoubrie that it was Mr. Wheeler's intent to put a gate across the entrance to the easement once it was obtained, but that the gate would not affect Mr. Bedard's access to his property. In response to Mr. Holcomb's request for such an easement, Mr. Macoubrie and Mr. Bedard traveled to the Morgan property and discovered that someone had already started bulldozing the road over which Mr. Wheeler sought an easement.

After Mr. Bedard discovered that someone had been bulldozing his property, Mr. Macoubrie contacted Mr. Holcomb and told him that Mr. Wheeler should stop any unauthorized bulldozing on Mr. Bedard's property. Mr. Macoubrie also informed Mr. Holcomb that Mr. Bedard was willing to grant Mr. Wheeler an easement, 30 feet wide by 550 feet long, in exchange for $2000, plus an additional $500 for attorney's fees and expenses. Mr. Macoubrie also told Mr. Holcomb that Mr. Bedard did not want a gate at the County Road, which would be at the south end of the easement but, rather, would only allow a gate to be installed at the north end of the easement. In response to Mr. Bedard's offer, Mr. Holcomb contacted Mr. Macoubrie and informed him that Mr. Wheeler accepted Mr. Bedard's offer for the easement, agreeing to comply with Mr. Bedard's wishes concerning the placement of a locked gate, but that he needed the easement to be 40 feet wide instead of 30 feet wide.

Thereafter, on August 18, 2003, Mr. Bedard executed and recorded an "Easement Quit Claim Deed" conveying to the Murray Morgan Estate an easement, 40 feet in width, over his property for the purpose of "ingress and egress from the public road to the adjoining real estate to the north." The conveyance was silent as to a gate. On August 26, 2003, by a Personal Representative's Deed, the Murray Morgan Estate conveyed the Morgan property and the easement to Mr. Wheeler. On the same date, Mr. and Mrs. Wheeler, Co-Trustees of the Mary Ellen Wheeler Revocable Trust, conveyed, by Trustee's Warranty Deed, the Morgan property and the easement to the Scherrers.

In November 2004, Mr. Bedard discovered that a gate, with a locked padlock, had been installed across the easement at the south end of the easement, approximately 100 feet from the County Road. On January 26, 2005, Mr. Bedard filed a petition for a permanent injunction to enjoin the Scherrers from maintaining a gate at the entrance to the easement because it restrained and hindered his access to his property. Following a bench trial on Mr. Bedard's petition, the trial court entered judgment in favor of the Scherrers, holding that the Scherrers were entitled to construct and maintain a gate in its current location across the roadway on the easement. In addition, the trial court, in its judgment, ordered that the Scherrers were fully responsible for all costs and maintenance of the gate and that the Scherrers could lock the gate, but must provide Mr. Bedard a key for his use in accessing his property. Mr. Bedard filed this appeal.

## Standard of Review

Appellate review of this court-tried civil case is governed by the dictates of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *Kerr v. Jennings,* 886 S.W.2d 117, 123 (Mo.App. W.D.1994). Accordingly, the decision of the trial court must be affirmed unless there is no substantial evidence to

support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law. *Id.* (citing *Murphy*, 536 S.W.2d at 32).

### Erection of Gate Outside Scope of Easement

■ In his sole point on appeal, Mr. Bedard asserts that the trial court erred in allowing the Scherrers to maintain a gate on the south end of the easement because the gate does not allow him unrestricted use of his property. Specifically, Mr. Bedard claims that as the owner of the servient estate, he has the "right of full dominion and use of" the easement and the placement of the gate inhibits his full dominion and use of his property. Therefore, Mr. Bedard contends that the gate is unlawful and the trial court erred in failing to enjoin the Scherrers from placing a gate on the easement.

Both parties in this case cite *Teal v. Lee,* 506 S.W.2d 492, 497 (Mo.App.1974), for the proposition that when an easement is silent regarding the erection of a fence or gate on an easement, the court is to use a four-factor test to determine whether the erection of a gate or fence is reasonable. Specifically, the court in *Teal* stated:

> In general the lawfulness of a fence or gate across a right-of-way is a question of fact. In determining whether or not a fence or gate may be erected across a right-of-way the courts take into consideration a number of factors. 52 A.L.R.3rd–Anno., Right to Maintain Fence or Gate Right of Way, Sec. 2(a) pp. 15–20 (1973). In those instances where the terms of the easement are

reduced to writing the terms of the grant would, of course, prevail. If, however, exclusion of the erection of a fence or gate across a right-of-way is not specifically set out in a grant of easement, the court will then consider the following factors; 1) the purpose for which the grant was made; 2) the intention of the parties as gleaned from the circumstances surrounding the grant; 3) the nature and situation of the property; and 4) the manner in which the easement has been used. L.A. Jones, A Treatise on the Law of Easements, Sec. 400, p. 319 (1898); G.W. Thompson, Commentaries on the Modern Law of Real Property, Sec. 431, pp. 725–726 (1961); 25 Am.Jur.2d Easements and Licenses, Sec. 90–91, pp. 496–498 (1966); 73 A.L.R. Easements, Sec. 50, pp. 778–792 (1931); 28 C.J.S. Easements s 98, pp. 780–783 (1941).

506 S.W.2d at 497. Because the grant of the easement in this case was silent regarding the erection of a gate, both parties argue that the court should apply the four-factor test set forth in *Teal.*

While *Teal* did not expressly state that the four-factor test was applicable only in those circumstances when it is the owner of the servient estate that desires to erect a fence or gate on an easement, under the facts of *Teal*, it is the owner of the servient estate that sought to erect a fence, not the holder of the easement. *Id.* at 494. Moreover, the authorities cited by *Teal* setting forth the four-factor test concern those instances when it is the owner of the *servient estate* that desires to erect a gate or fence on an easement.[1] For example, American Jurisprudence 2d states:

---

1. All of the authorities cited by *Teal*, with the possible exception of one, concern those instances when it is the owner of the servient estate that seeks to erect a gate on an easement. 506 S.W.2d at 497. Given its date of publication, this court was unable to determine whether L.A. Jones, A Treatise on the Law of Easements, Section 400, p. 319 (1898), stands for the same proposition.

In the absence of an express reservation of a right to maintain gates, it is the general rule that *whether the servient owner may erect and maintain gates,* bars, or fences across or along the easement of way depends on the intention of the parties connected with the original creation of the easement, as shown by the circumstances of the case, the nature and situation of the property subject to the easement, and the manner in which the way has been used and occupied.

25 Am.Jur.2d *Easements and Licenses* Section 88 (2004) (emphasis added). Similarly, Corpus Juris Secundum states:

Unless the grant of an easement expressly provides that the owner of the servient estate may erect and maintain fences, he cannot erect fences across or within the way so as to obstruct it entirely.

The right of the *owner of the servient estate to erect and maintain bars and gates across an easement* way depends upon the intention of the parties connected with the original creation of the easement, as shown by the terms of the grant, its purposes, nature, and situation of the property, and the manner in which the way has been used and occupied.

28A C.J.S. *Easements* Section 180 (1996) (emphasis added). *See also Claybrook v. Murphy,* 746 S.W.2d 140, 143–44 (Mo.App. W.D.1988) (setting forth the four-factor test and stating that "the general rule is . . . that unless the grant expressly provides otherwise, the *owner of the servient estate* may erect gates across the way, provided they are so located, constructed, and maintained as not to unreasonably interfere with the right of passage") (emphasis added).

■ In this case, however, the Scherrers, who have erected the gate on the easement, are not the owners of the servient estate but, rather, are the holder of an easement over Mr. Bedard's property. Thus, the issue raised by this case is not the issue addressed in *Teal* or the authorities cited in that case. Rather, the relevant issue in this case is what use the holder of an easement can make of the land subject to the easement, i.e., the scope of the easement. In making this determination, the general rule is that an easement owner can make only such use of an easement as is reasonably necessary to accomplish the purpose for which the easement was granted. *Reinbott v. Tidwell,* 191 S.W.3d 102, 111 (Mo.App. S.D.2006) (" '[T]he holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude.' " (citing Restatement (Third) of Property section 4.10 (2000))).

Here, Mr. Bedard granted the easement "for the purpose of ingress and egress from the public road to the adjoining real estate to the north." Thus, the dispositive question in this case is whether the Scherrers' placement of a locked gate on the easement is reasonably necessary to provide ingress and egress from Mr. Bedard's property to the Scherrers' property. The Eastern District of this court, in *Maasen v. Shaw,* 133 S.W.3d 514, 519 (Mo.App. E.D.2004), discussed the scope of an easement holder's reasonably necessary use of a servient estate when the easement was granted for the purpose of ingress and egress.[2] The court recognized that "[a]n

**2.** In *Maasen,* the deed did not specify "either the purpose of or the uses for the easement." 133 S.W.3d at 518. Because the deed was ambiguous, the court considered extrinsic evidence to determine the parties' intention and concluded that the parties intended that the easement "provide right of passage, ingress

easement created for egress and ingress gives a right of passage, and it allows the dominant owner unlimited reasonable use for ingress and egress." *Id.*

Courts of other jurisdictions have specifically addressed whether the right of ingress and egress gives the easement holder the right to place a gate across the entrance to the easement and found that it does not. *See Price v. McNeil,* 802 So.2d 1084, 1086–87 (Ala.Civ.App.2001) (easement holder's placement of locked gate, even though key provided to owner of servient estate, not reasonably necessary for purpose of ingress and egress); *Clark v. Kuhn,* 171 Or.App. 29, 15 P.3d 37, 41 (2000) (holding that easement holder's placement of gate across easement is not reasonably necessary for the purpose of ingress and egress). This court agrees that the erection of a locked gate across an easement is not reasonably necessary to provide a right of passage.[3]

■ Moreover, in Missouri, in determining an easement holder's rights of use to an easement for ingress and egress, the "'reasonable use'" analysis also examines the "degree of use" versus the "quality of use." *Maasen,* 133 S.W.3d at 519. In particular, if an easement holder's use of an easement impacts only the "degree of use," it may be found to be reasonable and, therefore, permissible. *Id.* If an easement holder's use of the easement impacts the "quality of use, [however,] it is not permissible, because it would create a substantial new burden on the servient estate." *Id.* In addition, "[a]ny doubt concerning an easement's scope should be resolved in favor of

the servient owner's free and untrammeled use of the land." *Id.*

Here, the Scherrers' placement of a gate at the south end of the easement blocks Mr. Bedard's access to his property for "inspection, enjoyment and repair of [his] fencing." In other words, the Scherrers' gate creates an obstruction on the easement that inhibits Mr. Bedard's free passage over his property. Therefore, the Scherrers' placement of a gate on the easement impacts not merely the "degree of use" of the easement but, also, impacts the "quality of use" of the easement. *Id.* at 520 ("placing an obstruction on the land . . . is a difference in quality of use"). Consequently, the Scherrers' placement of the locked gate at the south entrance of the easement is not a reasonable use of the easement. *Id.*

■ This is also consistent with the "general rule," that "the owner of an easement acquired by grant or reservation has no right to build fences along the sides of a way or erect gates across it." 28A C.J.S. *Easements* Section 180 (1996). *See also* 2 George W. Thompson, Commentaries on the Modern Law of Real Property Section 431, at 686 (1980 Replacement by John S. Grimes) ("the dominant owner does not have the right to place obstructions in a private way which interfere with the servient owner's right and invade his title"). Such a rule makes sense because "'"a party holding an easement with a right to use the land for a particular stated purpose does not hold title to the property affected by that easement."'" *S. Star*

---

and egress, . . . across the servient estate to the dominant estate." *Id.* at 519.

**3.** This court declines to speculate, however, that there would never be circumstances where the erection of a gate on an easement by the owner of the easement might be a reasonable use of an easement for the purpose of ingress and egress. Nevertheless, there are no facts in this case that would support a finding that placement of a locked gate across the easement by the Scherrers would be reasonably necessary to provide the Scherrers a right of passage over Mr. Bedard's property to their property.

*Cent. Gas Pipeline, Inc. v. Murray,* 190 S.W.3d 423, 430 (Mo.App. S.D.2006) (citations omitted). " 'An easement, strictly speaking, does not carry any title to the land over which it is exercised; it is rather a right to use the land for particular purposes.' "[4] *Id.* (citation omitted). *See also Beetschen v. Shell Pipe Line Corp.,* 363 Mo. 751, 253 S.W.2d 785, 786 (1952) ("An easement is a nonpossessory interest in land . . . and does not include the right to fence, that right remains with the owner of the servient estate and he is not bound to permit the erection of fences."); *Hundley v. Michael,* 105 N.C.App. 432, 413 S.E.2d 296, 298–99 (1992) (owner of easement may not erect fence on easement because such use constitutes excessive use and, therefore, may be enjoined); *Perlini v. Seminole Woods Cmty. Ass'n,* 582 So.2d 1221, 1225 (Fla.Dist.Ct.App.1991) (holder of easement not entitled to increase burden on equestrian easement over servient landowner's property beyond that reasonably contemplated at time of creation of easement and, thus, not entitled to erect fence on easement); *Beggs v. Ragsdale,* 120 Ill. App.3d 333, 75 Ill.Dec. 637, 457 N.E.2d 1079, 1084 (1983) (holder of easement not entitled to fence easement absent showing that "attendant burdens on the servient

estate are necessary to his reasonable use of the easement").

Nevertheless, in support of their right to install a gate on the easement, the Scherrers argue that a gate would "clearly help protect" both the Scherrers' property and Mr. Bedard's property "from trespassers, and poachers." The Scherrers also argue that because the trial court's judgment ordered them to provide Mr. Bedard with a key, the only interference with Mr. Bedard's right of passage is that he must now unlock and open the gate, which they claim is not an unreasonable interference with Mr. Bedard's right of passage. The Scherrers' arguments, however, are misplaced. The placement of a gate across the easement for the protection of the Mr. Bedard's property and the Scherrers' property, regardless of whether Mr. Bedard is provided a key to the gate, is simply not material, or reasonably necessary, to the use of an easement for ingress and egress. *Price,* 802 So.2d at 1087. *See also Clark,* 15 P.3d at 41 (finding immaterial easement holder's argument that installation of gate would provide protection from unwanted trespassers because purpose of easement was ingress and egress). As stated above, a gate creates an obstruction, which inhibits the free right of pas-

---

**4.** In addition to describing the easement conveyed in this case, the "Easement Quit Claim Deed" also contained the following language:

TO HAVE AND TO HOLD the same, with all the rights, immunities, privileges and appurtenances thereto belonging, unto the said party of the First Part, nor its heirs, nor any other person or persons for it or in its name or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises or any part thereof, but they and every one of them shall, but these presents, be excluded and forever barred.

From this language, there may be some question as to whether the deed conveyed merely an easement or some other right to the property. Nevertheless, on appeal, both parties proceed as if the "Easement Quit Claim

Deed" conveyed merely an easement. In fact, in their argument, the Scherrers concede that Mr. Bedard remains the servient owner of the property, which would only be relevant in the context of an easement. Moreover, language such as "right of ingress and egress" in a conveyance, such as in this case, "generally indicates the grant of an easement, not a fee simple estate. *Lacy v. Schmitz,* 639 S.W.2d 96, 99 n.1 (Mo.App.E.D.1982). Since the interpretation of a contract is a question of law, this court finds that the intent of the parties, based on the four corners of the document, was to convey an easement. *See Corbett v. Gerstein,* 95 S.W.3d 118, 119–20 (Mo.App. E.D.2002) (contract interpretation is question of law and intent of parties determined from four corners of the contract).

sage and, therefore, is outside the scope of the easement.

Mr. Bedard, as "'[t]he owner of land burdened by [the] easement retains the right of full dominion and use of the land affected by the easement; he may control and use his property in any way that does not substantially interfere with the reasonable use of the easement by the easement holder.'" *Maasen,* 133 S.W.3d at 520 (citation omitted). "'If the user of an easement exceeds his rights, either in manner or extent of use, he is guilty of trespass' to the extent of the unauthorized use." *Id.* (citation omitted). Because placement of a gate on the easement is not necessary for the purpose of ingress and egress, the gate exceeds the scope of the easement. In addition, the gate creates an obstruction on Mr. Bedard's property and, therefore, impedes Mr. Bedard's "free and untrammeled use" of his land. *Id.* at 519. Consequently, Mr. Bedard may enjoin the Scherrers from maintaining the gate on the easement. *Id.* at 520. Accordingly, the trial court erred in denying Mr. Bedard's request for injunctive relief and in permitting the Scherrers to construct and maintain a gate on the easement.

The trial court's judgment is reversed and the cause is remanded for entry of an injunction prohibiting the Scherrers from maintaining a gate across the easement.

All concur.