**LOBO PAINTING, INC., Appellant,**

v.

**LAMB CONSTRUCTION COMPANY, Respondent.**

**No. ED 88807.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 19, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2007.

Application for Transfer Denied
Sept. 25, 2007.

Matthew J. Fairless, Nicholas J. Komoroski, Saint Charles, MO, for Respondents.

Joel D. Brett, Ruth Kraus, Saint Charles, MO, for Appellant.

## OPINION

GLENN A. NORTON, Presiding Judge.

Lobo Painting, Inc. ("Subcontractor") appeals the decision denying its claims of breach of contract and quantum meruit against Lamb Construction Co. ("Contractor"). We reverse and remand.

## I. BACKGROUND

Contractor hired Subcontractor to paint a building that Contractor was building for West County EMS ("Owner"). Contractor paid Subcontractor all but the "retainage," which was five to ten percent of the total payment. Contractor's sole member, Kevin Lamb, testified that Contractor was withholding payment of Subcontractor's retainage of $2,441 because Owner was withholding Contractor's final payment.[1] Lamb testified that he did not know why Owner was withholding final payment to Contractor and that Owner had in fact not articulated a specific reason. Lamb interpreted the contract to allow Contractor to withhold final payment until it was paid in full by Owner.

The pertinent clause in Contractor and Subcontractor's contract stated:

12.1 Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the

---

1. Owner's final payment to Contractor was Contractor's approximately $200,000 retainage.

Owner, final payment to the Subcontractor shall be made upon demand.

Subcontractor sued Contractor for breach of contract and under quantum meruit. The court found in favor of Contractor on both counts. This appeal follows.

## II. DISCUSSION

### A. Standard of Review

In a court-tried case, we affirm the judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and inferences therefrom in a light most favorable to the judgment and disregard contrary evidence. *Heritage Roofing, LLC v. Fischer,* 164 S.W.3d 128, 132 (Mo.App. E.D.2005). Contract interpretation, however, is a matter of law that we review *de novo. Jones Co. Custom Homes of Tennessee, Inc. v. Commerce Bank, N.A.,* 116 S.W.3d 653, 657 (Mo.App. E.D.2003).

### B. Contract Ambiguity

In its sole point on appeal, Subcontractor argues that paragraph 12.1 is ambiguous and, therefore, not a condition precedent to Contractor's obligation to pay Subcontractor.

In interpreting a contract, we are charged with ascertaining the parties' intent and giving effect to that intention. *State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 859 (Mo. banc 2006). If the language is unambiguous, the parties' intent is gathered solely from the plain meaning of the contract. *Id.* at 859–60. If the terms are ambiguous, the court can refer to matters beyond the document itself. *Eveland v. Eveland,* 156 S.W.3d 366, 369 (Mo.App. E.D.2004). We find an ambiguity where, from the four corners of the contract, "the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." *Id.*

We find ambiguity in paragraph 12.1 of the contract. The second sentence of the paragraph is susceptible to at least two meanings. On one hand, it could be read that the clause "for any cause which is not the fault of the Subcontractor" applies only to the subsequent clause "a certificate for payment is not issued." In that case, it would only be necessary for the court to determine whether or not Subcontractor was at fault if the issue was whether a certificate for payment was not issued. If either of the other events occurred, i.e., if Contractor did not receive timely payment or did not pay Subcontractor within three working days after receipt of payment, final payment would have to be made on demand. Payment would be made without inquiry into what party is to blame for Owner's nonpayment to Contractor or Contractor's delay in paying Subcontractor past three days after Owner paid it. Another reasonable reading of the sentence is that one of the three listed events must occur and the event must have occurred through no fault of Subcontractor for Subcontractor to have the right to payment on demand. In that case, the court would be required to determine if Subcontractor was to blame for nonpayment by Contractor or Contractor delaying payment more than three days after it was paid.

After determining that a contract is ambiguous, this Court can look to evidence outside the contract, such as testimony, to determine the parties' intent. *See id.* There is little evidence in the record of the parties' mutual understanding of the second sentence of paragraph 12.1. While testifying, Kevin Lamb was questioned generally about the provision.

He was shown a copy of the contract and directed to "Article 12," then asked:

Q. What do you understand is your obligation in this scenario where you haven't been paid as to your obligation to pay [Subcontractor]?

A. My understanding is our obligation is to pay them within short order after we've been paid. Not prior to that.

Q. And that—And you're relying on the contract and (indiscernible)?

A. The contract and our normal course of business the way we've done it with [Subcontractor] and other contractors prior to this project and subsequent to this project.

Q. Okay. So you're saying that, in fact, as you deal with subcontractors as [Contractor], they all understand when the owner pays [Contractor], [Contractor] pays them?

A. Correct.

This testimony is evidence of Lamb's understanding that under no circumstance is Contractor to pay Subcontractor unless Owner has paid Subcontractor. From this, one can infer Contractor's understanding of the second sentence—that Subcontractor's fault is not considered if it has not been paid when Owner has not made final payment to Contractor.

The testimony of Robert Danuser, owner of Subcontractor, is less enlightening on this subject. He spent some time specifically analyzing the words of the first sentence of paragraph 12.1, read to him by opposing counsel. On redirect, this exchange took place:

Q. Mr. Danuser, if you turn to Article 12, the last sentence of Article 12 states: If for any cause which is not the fault of the subcontractor. Do you believe there's any fault in non-payment from this case on your part?

A. Say it again.

Q. Is there any fault on your part for [Contractor] not receiving payment that you know of?

A. No.

Q. And then there's a clause that says: Or the contractor does not receive timely payment. As far as you know the contractor has not received timely payment according to [Owner] and [Contractor], correct?

A. That's correct.

Q. Then it says: Final payment to the subcontractor shall be made on demand. Have you made demand?

A. Yes, we have.

On Contractor's recross examination, counsel asked and Danuser answered:

Q. We missed a clause right before that last one. It says: Within three working—Read with me, second to last line. Within three working days after receipt of payment from the owner, final payment to the subcontractor shall be made upon demand, right?

A. That's not my understanding.

Q. It's not your understanding. Is that what it says, though?

A. Yes.

Counsel then interrogated Danuser about whether he knew that Contractor had not yet been paid. This testimony is not indicative of Subcontractor's or Contractor's intent in entering into the contract. His testimony on redirect examination dealt with whether Subcontractor had satisfied each clause in sentence two when each was addressed alone. During recross examination, he testified that the language of the contract was not his "understanding," but did not testify about what his intent or understanding actually was.

The ambiguity in the contract cannot be resolved without first resolving the conflicting testimony, which requires deter-

mining the witnesses' credibility. We defer to the trial court on issues of witness credibility, because it is in a better position than we are to make a credibility determination. *John R. Boyce Family Trust v. Snyder*, 128 S.W.3d 630, 633 (Mo.App. E.D.2004). Because the court found the contract unambiguous, it necessarily did not examine the witnesses' credibility on this subject. We remand so that a trier of fact may determine the parties' intent. *See Eveland*, 156 S.W.3d at 370 (finding an ambiguity and remanding to determine intent).

## III. CONCLUSION

We reverse and remand for further proceedings consistent with this opinion.

LAWRENCE E. MOONEY, J. and KENNETH M. ROMINES, J., concur.