**LIVERS BRONZE, INC., Appellant,**

v.

**TURNER CONSTRUCTION COMPANY, Respondent.**

No. WD 68692.

Missouri Court of Appeals,
Western District.

June 24, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 2008.

Application for Transfer Denied
Oct. 28, 2008.

Greg T. Spies, Kansas City, MO, for appellant.

Jerome V. Bales, Justin Nichols, Co-counsel, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, LISA WHITE HARDWICK, Judge and JOSEPH P. DANDURAND, Judge.

JOSEPH M. ELLIS, Judge.

Livers Bronze, Inc. appeals from the dismissal of its petition against Respondent Turner Construction Company for lack of subject matter jurisdiction. Specifically, it asserts that the trial court erred in finding that a forum selection clause in a separate contract had been incorporated by reference into the contract between the parties.

Respondent was the general contractor on a commercial construction project in Pennsylvania. On February 17, 2005, it entered into a subcontract with Appellant ("the Subcontract"), under which Appellant was to perform and furnish all labor and materials for the glass wall/rail systems on the project. Appellant is a Missouri corporation with its principal place of business in Missouri, and Respondent is a Delaware corporation with offices across the country, including in Missouri.

The Subcontract provides that Appellant was to comply with architectural plans, a "General Contract," and a seven-page document attached to the Subcontract; all of these documents together were "sometimes referred to as the Contract Documents." Neither the "General Contract" nor the architectural plans were attached, but the Subcontract states that they were available for review at Respondent's office. The document attached to the Subcontract is entitled "Turner Construction Company, Scope of Work, Dechert LLP—Cira Centre—Philadelphia, PA, Between, Turner Construction Company and Livers Bronze Company, February 17, 2005" and lists nine additional "Contract Documents" with which Appellant was required to comply.

The Subcontract defines the "General Contract" as "the General Contract (hereinafter called the General Contract) between Turner and California State Teachers Retirement System & Thomas Properties Group LLC Brandywine Cira L.P. (hereinafter called the Owner) dated 2/9/05." The Subcontract also contains a dispute resolution clause, which states:

> The parties recognize that problems and disputes between them may occur and that it is preferable for them to reach an amicable resolution of same without the need to resort to formal dispute resolution procedures. In that regard, they each pledge to participate in good faith in voluntary and non-binding Alternate

Dispute Resolution (ADR) procedures. However, in the event that such disputes are not resolved by mediation or another ADR procedure as Turner and the Subcontractor may agree then such disputes shall be resolved at Turner's sole option either in the manner and forum pursuant to which disputes between the Owner and Turner are to be resolved under the terms of the General Contract or according to law. . . .

"ADR" is not further defined, and there is no forum selection clause in the Subcontract.

A dispute arose concerning payment under the Subcontract, and the parties met to discuss possible settlement but were unable to resolve the dispute. On February 16, 2007, Appellant initiated this action against Respondent in the Circuit Court of Jackson County, Missouri, to collect amounts due and owing.

On May 1, 2007, Respondent filed a demand for mediation in Pennsylvania pursuant to a dispute resolution clause in the "Dechert Tenant Improvement Agreement," which provides that all disputes must be submitted to non-binding mediation in Pennsylvania and that any disputes not resolved through mediation must be litigated in Pennsylvania. The next day, Respondent filed a motion to dismiss this action based on lack of subject matter jurisdiction, asserting that the forum selection clause in the "Dechert Tenant Improvement Agreement" was incorporated by reference into the Subcontract. Respondent admitted that the Subcontract did not specifically refer to the "Dechert Tenant Improvement Agreement" but stated that the reference to the "General Contract" with a different name, parties, and date was a "clerical error." It asserted that the parties intended for the "Dechert Tenant Improvement Agreement" to be incorporated into the Subcontract because that was the only "General Con-

tract" for this aspect of the construction project. Respondent attached an affidavit from its project executive in support of these allegations.

Appellant opposed the motion to dismiss, arguing that the "Dechert Tenant Improvement Agreement" was not incorporated into the Subcontract because it had a different title, parties, and date and none of its terms were specifically referenced in the Subcontract. Appellant stated that it had never seen the "Dechert Tenant Improvement Agreement" until Respondent provided it as an attachment to its motion. Appellant further stated that there was never any discussion between the parties that any disputes must be resolved in Pennsylvania, that it did not intend or agree to be bound by any such forum selection clause, and that it always intended to retain its right to pursue claims in Missouri. Appellant presented an affidavit from its president in support of these statements.

After considering the parties' arguments, including Respondent's reply and Appellant's surreply that primarily addressed the admissibility of the affidavits, the trial court granted Respondent's motion to dismiss. This appeal follows.

In its sole point of error, Appellant asserts that the trial court erred in dismissing its petition because it necessarily found, erroneously, that the forum selection clause contained in the "Dechert Tenant Improvement Agreement" was incorporated by reference into the Subcontract.

■ As a preliminary matter, we must determine our standard of review. Respondent contends that the proper standard of review is abuse of discretion because the court granted a motion to dismiss for lack of subject matter jurisdiction. Appellant concedes that this is generally the proper standard of review for such motions, but it asserts that the proper standard in the case at bar is *de novo* because the court

granted the motion to dismiss based on enforcement of an outbound forum selection clause. Appellant relies on *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. banc 2007), and *Burke v. Goodman*, 114 S.W.3d 276 (Mo.App. E.D.2003).

Appellant's reliance on these cases is misplaced. *Gibbons* did not address a forum selection clause but, rather, privity of contract, and it merely cited *Burke* for the *de novo* standard of review. 216 S.W.3d 667, 668–69. *Burke* affirmed the trial court's grant of a motion to dismiss based on an outbound forum selection clause and stated that an order granting a motion to dismiss is reviewed *de novo*, with no further discussion of the standard of review. 114 S.W.3d 276, 278–79. The standard of review in these cases was not dependent on the grounds for dismissal, and our Supreme Court has summarized the proper standard of review for motions to dismiss based on lack of subject-matter jurisdiction:

> Dismissal for lack of subject-matter jurisdiction is proper whenever it appears, by suggestion of the parties or otherwise, that the court is without jurisdiction. The quantum of proof is not high; it must appear by the preponderance of the evidence that the court is without jurisdiction. Generally, the decision to dismiss for lack for subject-matter jurisdiction is a question of fact left to the sound discretion of the trial court, and it will not be reversed on appeal absent an abuse of that discretion. However, where ... the facts are uncontested, a question as to the subject-matter jurisdiction of a court is purely a question of law, which is reviewed *de novo*. This Court is primarily concerned with the correctness of the result, not the route taken by the trial court to reach it; the trial court's judgment will be affirmed if it is correct on any ground supported by the record, regardless of whether the trial court relied on that ground.

*Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003) (internal citations omitted); *see also Powell v. State Farm Mut. Auto. Ins. Co.*, 245 S.W.3d 864 (Mo.App. E.D., 2008).

*Gibbons* and *Burke* were both presented on undisputed facts, so *de novo* review was proper. *See Gibbons*, 216 S.W.3d at 668–69; *Burke*, 114 S.W.3d at 278–81. However, in the case at bar, the parties each presented an affidavit alleging different facts concerning intent to incorporate a "General Contract" into the Subcontract. Thus, because the facts are contested, we review the trial court's grant of the motion to dismiss for abuse of discretion. *Mo. Soybean*, 102 S.W.3d at 22. However, the court's ruling was based on contract interpretation, which we review *de novo* on appeal. *Monsanto Co. v. Syngenta Seeds, Inc.*, 226 S.W.3d 227, 230 (Mo.App. E.D. 2007). "[W]e defer to the trial court's factual finding[s], [but] we independently evaluate its conclusions of law." *Id.* (internal quotation omitted).

In interpreting a contract, we attempt to ascertain the parties' intentions "based on the contract alone unless the contract is ambiguous." *Ethridge v. Tierone Bank*, 226 S.W.3d 127, 131 (Mo. banc 2007) (internal quotation omitted). "Where a written contract is unambiguous and complete on its face, parol evidence may not be introduced to vary or contradict the terms of the agreement." *Jackson County v. McClain Enters., Inc.*, 190 S.W.3d 633, 640 (Mo.App. W.D.2006) (internal quotation omitted). However, a party may introduce parol evidence for such purposes if it argues that there was "fraud, mutual mistake, accident or erroneous omission," such that the contract does not reflect the parties' intentions. *Angoff v. Mersman*, 917 S.W.2d 207, 211 (Mo.App. W.D.1996). An unambiguous contract "will be enforced according to its terms," but if the contract is ambiguous, it "will be construed against

the drafter." *Triarch Indus., Inc. v. Crabtree,* 158 S.W.3d 772, 776 (Mo. banc 2005).

"If the terms are ambiguous, the court can refer to matters beyond the document itself." *Lobo Painting, Inc. v. Lamb Constr. Co.,* 231 S.W.3d 256, 258 (Mo.App. E.D.2007). "We find an ambiguity where, from the four corners of the contract, the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." *Id.* (internal quotation omitted). "A contract is not ambiguous merely because the parties disagree as to its construction." *Ethridge,* 226 S.W.3d at 131 (internal quotation omitted).

The parties both assert that the Subcontract is unambiguous. Appellant contends that the Subcontract unambiguously refers to a contract that it never saw and that does not contain a forum selection clause and that Respondent had the burden to correctly identify the "General Contract" if its terms were to be incorporated by reference. Respondent contends that the Subcontract unambiguously refers to the "General Contract" concerning tenant improvements on the project and that its affidavit explains the clerical error obvious on the face of the Subcontract to show the true intentions of the parties.

We agree that the Subcontract is unambiguous because, looking at its four corners, it clearly defines the "General Contract" as a "General Contract ... between Turner and California State Teachers Retirement System & Thomas Properties Group LLC Brandywine Cira L.P. (hereinafter called the Owner) dated 2/9/05." Respondent, nevertheless, contends that its affidavit was admissible to explain the clerical errors concerning the identification of the "General Contract" and to thereby show the parties' true intentions, citing *State v. Gleason,* 814 S.W.2d 310 (Mo.App. S.D.1991), as support for its assertion.

*Gleason* is a criminal case where the defendant was charged and convicted on multiple counts of receiving stolen property and one count of stealing. *Id.* at 311. On appeal, the defendant challenged the admissibility of numerous items of evidence found as a result of execution of a search warrant. *Id.* at 312. The warrant on its face reflected issuance at 9:30 a.m. *Id.* at 311. The trial court admitted testimony from the Sheriff and an affidavit from the issuing judge that the warrant was actually issued at 9:30 p.m. *Id.* at 312. Gleason argued that the trial court erred in admitting parol evidence of the clerical error. *Id.* In rejecting the defendant's contention, the court acknowledged that the general rule is that parol evidence may not be used "to contradict or vary the terms of a valid written instrument." *Id.* But the court pointed out that a search warrant is not a "contractual written instrument," but, rather, is a public record, and the law permits an error in a public record to be established by parol evidence. *Id.* Thus, Respondent's reliance on *Gleason* as support for its contention is without merit.

Similarly, in *Unlimited Equipment Lines, Inc. v. Graphic Arts Centre, Inc.,* 889 S.W.2d 926 (Mo.App. E.D.1994), the court held that extrinsic evidence was admissible to "aid in [the contract's] interpretation" where both parties testified that the contract should have substituted a certain phrase because there was a "mutual mistake." *Id.* at 933. In the case at bar, although there appears to be no real dispute that the "General Contract" referred to in the Subcontract did not exist, the parties disagree as to which contract should have been listed and thereby incorporated into the Subcontract. Therefore, Respondent's affidavit alone would be insufficient to establish the correct identification of the "General Contract."

"In Missouri, matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in *haec verba.*" *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 435 n. 5 (Mo. banc 2003). "Under this principle, parties in construction subcontract situations have been held to be subject to arbitration provisions contained in construction contracts that were incorporated by reference into the subcontracts." *Id.; see also Sabatino v. LaSalle Bank, N.A.,* 96 S.W.3d 113, 119 (Mo.App. W.D.2003) (upholding forum selection clause when it was incorporated by blanket reference to another agreement). "[T]he parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, and including a separate document which is unsigned" only if "the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt." *Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc.,* 204 S.W.3d 183, 196 (Mo.App. E.D.2006).

Only limited portions of the "Dechert Tenant Improvement Agreement" have been provided in the record on appeal. From the general provisions, it is apparent that it is a contract between "Turner Construction Company, Turner Special Projects Division (The 'Tenant Improvement Contractor' or 'TI Contractor')" and Brandywine Cira, L.P. ("Brandywine"), the owner and landlord for the building to be constructed. It is "dated February 15, 2005," but it also has a footer that states, "Draft (2/10/05)." It provides that Brandywine had entered into a separate contract "with Turner Construction Company ('Turner' or the 'Construction Manager')," *i.e.,* Respondent, on November 7, 2003, concerning construction of the "Base Building" for the project. It further provides that Brandywine was arranging for performance of certain "tenant improvement work" pursuant to plans "dated as of October 1, 2004" as submitted by the "Tenant," who is identified on the title page as Dechert, LLP. It appears that it then goes into specific provisions, most of which have not been provided to this Court.

Even assuming that the reference to the "California State Teachers Retirement System & Thomas Properties Group LLC" as additional parties to the "General Contract" was a clerical error, the Subcontract still refers to a contract between Respondent and Brandywine dated February 9, 2005. The "Dechert Tenant Improvement Agreement" specifically refers to a separate contract between Respondent and Brandywine. Thus, it is clear that there were several contracts involved in this construction project. But it is not at all clear, as Respondent contends, that the parties intended to incorporate the "Dechert Tenant Improvement Agreement" into the Subcontract, or that the references to different parties and a different date were "obvious clerical errors." The Subcontract does not describe the intended "General Contract" in such terms as to allow its identity to be determined without a doubt, especially since none of the contracts are dated February 9, 2005, and the Subcontract contains a different dispute resolution procedure. *See Intertel,* 204 S.W.3d at 196.

Accordingly, the trial court erred in dismissing Appellant's petition. The judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

All concur.