

# Missouri Court of Appeals

## Southern District

### Division Two

DAVID K. MURDAUGH and DENISE )
M. MURDAUGH, Husband and Wife, )
                                      )
      Plaintiffs-Respondents, )
                                        )
vs. )     No. SD32619
                                        )
RICHARD PATTERSON and NORMA )     **Filed: July 9, 2014**
PATTERSON, Husband and Wife, and )
MARK A. PATTERSON, a Single Person, )
                                        )
      Defendants-Appellants. )

## APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

### Honorable Michael J. Cordonnier, Circuit Judge

### AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS

This is an appeal from a declaratory judgment, and it involves a dispute between neighbors about the proper scope of an express ingress-and-egress easement. Norma Patterson and her son, Mark A. Patterson ("Defendants"), appeal the amended judgment ("the Judgment") that declared the extent of their rights in a 35-foot-wide, deeded easement ("the Easement") across property owned by David K. Murdaugh and Denise M. Murdaugh, husband and wife ("Plaintiffs").[1]

---

[1] We may occasionally use the first names of members of the Patterson family solely for purposes of clarity; no disrespect or undue familiarity is intended. Richard Patterson, Norma's husband and Mark's father, died shortly after the Judgment was entered.

1

Defendants' three points claim the trial court committed a total of five reversible errors: 1) "ruling that [Defendants] '*may*' have the right 'to improve an additional portion of the [E]asement for their reasonable ingress and egress' if they 'need' to do so"; 2) enjoining Defendants "from 'making any use of the [Easement] that is inconsistent with'" the Judgment because Defendants' "deeded right to use the [E]asement for ingress and egress to their property is paramount to any inconsistent use that [Plaintiffs] might make of it"; 3) enjoining Defendants from "'making any use of the [Easement] that is inconsistent with'" Plaintiffs' right to plant and cultivate hay on the non-graveled portions of the Easement; 4) finding that Defendants "'have no right to interfere with'" Plaintiffs' cultivation of hay because Defendants' rights to have, maintain, repair, and expand the roadway (within its deeded size) are paramount to Plaintiffs' right to cultivate hay within the Easement; and 5) finding that Plaintiffs "have 'the right to have, or refuse to have, a gate located on the easement' because the [trial] court failed to apply the proper four-part test to determine whether [Plaintiffs] would have the right to install a gate[.]"

Because several portions of the Judgment challenged by Defendants address issues that were not ripe for judicial declaration, we affirm the Judgment in part, reverse in part, and remand the matter to the trial court to enter a judgment consistent with this opinion.

### Governing Law and Applicable Principles of Review

We first note that "[a] declaratory judgment is not a general panacea for all real and imaginary legal ills." *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. banc 2003). A declaratory judgment should not be used to decide "hypothetical or speculative situations that may never come to pass." *Id.* Instead, there must be:

> (1) a justiciable controversy that presents a real, substantial, presently-
> existing controversy admitting of specific relief, as distinguished from an

2

advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, "consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief;" (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

*Id.* "Ripeness is determined by whether 'the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character.'" ***Schweich v. Nixon***, 408 S.W.3d 769, 774 (Mo. banc 2013) (quoting ***Mo. Health Care Assn v. Attorney Gen. of Mo.***, 953 S.W.2d 617, 621 (Mo. banc 1997).

> An easement is a non-possessory interest in the real estate of another. The interest is not an interest in title, but confers a right of one person to use the real estate of another for a general or specific purpose. *Farmers Drainage Dist. of Ray Cnty. v. Sinclair Refining Co.*, 255 S.W.2d 745, 748 (Mo.1953). Though the right conferred by an easement is not a possessory right, it is nonetheless a right that can be enforced at law or in equity.

***Burg v. Dampier***, 346 S.W.3d 343, 353 (Mo. App. W.D. 2011).

"An easement appurtenant creates a dominant tenement (the land which benefits from the easement) and a servient tenement (the land which is burdened by the easement)." *Id.* "The owner of [a] servient estate has the right of full dominion and use of a roadway strip of land, but he cannot substantially interfere with its reasonable use by the easement owner." ***Beiser v. Hensic***, 655 S.W.2d 660, 663 (Mo. App. E.D. 1983). As a result, "[t]he servient estate owner may not make the easement less useful or convenient." *Id.* "The fact that a grant [of an easement] does not include a catalogue of the myriad of imaginable interferences does not sanction the unmentioned." ***Miss. River Transmission Corp. v. Wachter Constr., Inc.***, 731 S.W.2d 445, 447-48 (Mo. App. E.D. 1987).

Generally, the right of use of an easement "is paramount to every right of the owner of the fee which is inconsistent with such use[.]" ***Kansas City Power & Light Co. v. Kansas***

3

*City*, 448 S.W.2d 612, 617 (Mo. 1969). But "an easement's use is limited to the purposes for which it was created." *Maasen v. Shaw*, 133 S.W.3d 514, 519 (Mo. App. E.D. 2004). "A 'roadway' easement has been construed to afford a right of ingress and egress over a servient tenement." *Burg*, 346 S.W.3d at 353 (quoting *Beiser*, 655 S.W.2d at 662). "An easement created for egress and ingress gives a right of passage, and it allows the dominant owner unlimited reasonable use for ingress and egress." *Maasen*, 133 S.W.3d at 519. "The rights to store, park, plant, and construct on the non-roadway portions of the easement remain with the servient owner[,]" but "the dominant owner may remove trees and earth that obstruct the easement roadway." *Id.* at 520.

"In order for the easement to be exclusive, the language used to create it must refer 'to the exclusion of the servient tenement from participation in the rights granted to the dominant owner.'" *Grider*, 325 S.W.3d at 448 (quoting *Maasen*, 133 S.W.3d at 518). "[W]here an easement is non-exclusive, the owners of the servient tenement may use the easement as long as that use does not substantially interfere with the dominant tenement's reasonable use of the easement." *Burg*, 346 S.W.3d at 355.

"Whether the use of a non-exclusive easement by the owners of the servient tenement substantially interferes with the dominant tenement's use of the easement is a question of fact to be determined by the trial court." *Id.* "In general the lawfulness of a fence or gate across a right-of-way is a question of fact." *Teal v. Lee*, 506 S.W.2d 492, 497 (Mo. App. St.L.D. 1974). "This court defers to the trial court's findings of fact, due to the superior ability of the trial court to judge the credibility of the witnesses." *Nolte v. Corley*, 83 S.W.3d 28, 33 (Mo. App. W.D. 2002).

4

"A claim that the judgment erroneously declares or applies the law . . . involves review of the propriety of the trial court's construction and application of the law." ***Pearson v. Koster***, 367 S.W.3d 36, 43 (Mo. banc 2012). *De novo* review is applied "to questions of law decided in court-tried cases." ***Id.*** We do not defer to the trial court's conclusions regarding questions of law. ***Id.*** at 44.

## Facts and Procedural Background

Plaintiffs' October 2009 petition sought a judgment declaring that they "have the right to enter their property through the gate installed by Defendants, and Defendants have no right to lock said gate . . . or to erect a fence of any kind at any location upon Plaintiffs' property[.]" Plaintiffs also sought a permanent injunction enjoining Defendants "from preventing Plaintiffs' access to Plaintiffs' real property through the gate installed by Defendants with Plaintiffs' permission at the intersection of the purported easement and [the farm road.]"

Defendants eventually filed counterclaims seeking a declaration that "Plaintiffs have unreasonably interfered with [their use of the Easement,]" money damages, and an order enjoining Plaintiffs from impeding Defendants' "ingress and egress across the [Easement] so that their gate remains closed to unauthorized traffic[.]" A bench trial on the competing claims was held in October 2012. We summarize the trial evidence in the light most favorable to the Judgment. ***Grider v. Tingle***, 325 S.W.3d 437, 440 (Mo. App. S.D. 2010).

In 1992, Mark and Rhonda Patterson, as husband and wife, acquired 72.9 acres of Greene County land and built a house on it. In 1995, Mark commissioned a survey of a five-acre portion of the property ("the five-acre tract") that included the house and described

5

a 35-foot easement to reach the five-acre tract. The easement was recorded in January 2005, and it read:

> PRIVATE ROAD EASEMENT DESCRIPTION: Commencing at the Northwest corner of the Southwest Quarter of Section 11, Township 29 North, Range 20 West; thence South along the West line of said Southwest Quarter a distance of 660.0 feet for a point of beginning; thence South a distance of 35.0 feet; thence East and parallel with the North line of said Southwest Quarter a distance of 1486.0 feet; thence North a distance of 35.0 feet; thence West a distance of 1486.0 feet to the point of beginning, being a part of the Northwest Quarter of the Southwest Quarter and a part of the Northeast Quarter of the Southwest Quarter, all in Section 11, Township 29 North, Range 20 West, in Greene County, Missouri, Except that part thereof taken, deeded or used for County Road purposes.

In May 2007, Plaintiffs purchased all of the original property except the five-acre tract (approximately 67.9 acres) from Mark and Rhonda at auction.[2] The general warranty deed they received provided that the land was "subject to any part thereof taken, deeded or used for road or highway purposes." Mr. Murdaugh was aware of the Easement at the time of the auction, and the auctioneer pointed it out "in the pre-auction discussion[.]" The Easement was "just very roughly graded" at that time. After their purchase, Plaintiffs were cleaning up the land and caused some "debris" to be piled on the Easement. Richard called Plaintiffs and complained. Mr. Murdaugh agreed to move the debris, but Richard offered to move it, and he did so.

Mr. Murdaugh acknowledged that Defendants used the gravel drive on the Easement. Mr. Murdaugh's employee, Larry Fultz, testified that the gravel drive was "10 or 12 feet" wide. After Defendants installed the gravel drive, they installed a gate at the end of the gravel where it met the farm road. Mr. Murdaugh said that erecting the gate "would be fine" as long as Plaintiffs were given access via a "buddy-lock system." A buddy-lock system uses a lock at each end of a chain that is wrapped around a post to secure the gate with the

---

[2] Mark and Rhonda divorced at some point, and Defendants subsequently acquired the property at issue.

two locks fastened together. Using that method, unlocking either lock will allow the gate to be opened.

After the gate was secured with the buddy-lock system for a period of time, Defendants secured the gate using a chain with only one lock, and Defendants never gave Mr. Murdaugh a key to that lock. Mr. Murdaugh found the gate locked with a lock he could not open on "[d]ozens" of occasions. Mr. Fultz also testified that there were times after the gate was installed that he could not get through it because it was locked with one lock and not a buddy-lock. Mark admitted that there were occasions on which he had "locked [the] gate with a lock that [Plaintiffs didn't] have a key to[.]"

As a result, Plaintiffs could not get their "hay equipment in and out" at that location, so they cut a new access path onto their property north of the Easement, and that path traveled toward and eventually intersected the Easement. After that took place, Plaintiffs "encountered fairly consistently either rows of rocks or piles of gravel" which were placed on the Easement to either side of the gravel drive. Plaintiffs had to use equipment to "smooth it out" so that they could get all of their equipment through the intersection of the new path and the Easement.

On some occasions, Mr. Fultz was able to enter through the gate because it was unlocked. On some of those occasions, he then saw Mark lock the gate, forcing Mr. Fultz to exit the property across Plaintiffs' other acreage. According to Mr. Fultz, this happened "many times."

A chain was also stretched from the northern gate post at the western end of the Easement to another post further north. Mr. Murdaugh did not give Defendants permission to put the chain up, and he was not given a key to the lock that secured it. The chain

7

prevented Mr. Murdaugh from accessing his property using the area immediately north of the gate. Mr. Fultz testified that the chain was "always up[.]" Mark admitted putting the chain up sometime after he installed the gate.

Mr. Murdaugh next observed that some fence posts had been put alongside the Easement "[i]n order to do fencing." One fence post was installed. Mr. Murdaugh told Defendants that they could not put up a fence, but Defendants disagreed. Plaintiffs had their attorney send Defendants a letter, and no fence had been installed at the time of trial.

Mr. Murdaugh testified that he had plowed his field "up very close to where the gravel is" on the Easement, and he had planted hay on the un-graveled portion of the Easement. "[A]s soon as it sprouted, [it] was torn up with a tractor and blade [by someone]. Even out into [Plaintiffs'] field."

The trial court took the matter under advisement at the conclusion of the evidence, and both parties filed proposed findings of fact. The Judgment, entitled "**AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT**[.]" was entered on November 8, 2012.[3] The Judgment included Findings of Fact stating that "[i]t is unclear, and now irrelevant, if the installation of the gate was initially undertaken with the permission of Plaintiffs." Nonetheless, the trial court further found that Defendants had installed the gate, and they had "periodically locked the gate . . . at times with a lock Plaintiffs cannot relieve." The Findings of Fact also included that "Plaintiffs and Defendants have each alleged the other has frustrated the other[']s access across the [Easement]. . . . Neither side has clean hands with regard to some or all of this conduct."

---

[3] A docket entry states that a judgment entered on November 6, 2012 was entered "due to scrivener's error[.]" A copy of the November 6th judgment is not included in the legal file.

The Judgment granted Plaintiffs' claims "for declaratory and injunctive relief" and denied Defendants' counterclaims.  The Judgment also stated:

> [T]he Court declares that Plaintiffs are the fee owners of the property described in the [Easement] subject only to Defendants' right to the reasonable use of the easement property solely for ingress and egress to their [five-acre tract].  The Court therefore permanently enjoins Defendants, or anyone taking by or through them, from making any use of the [Easement] that is inconsistent with Plaintiffs' use and enjoyment of their property and the Conclusions of Law described herein.

The incorporated "Conclusions of Law" included the following matters relevant to the instant appeal:

2.      As owners of the land burdened by the [Easement], Plaintiffs have the right of full dominion of that land and the right to use that land in any legal way they choose that does not substantially interfere with the reasonable use of the [Easement] by Defendants, as holders of the [Easement].  Defendants' use of [the E]asement is limited, and may be used solely as a means of ingress and egress to their [five-acre tract].

3.      Plaintiffs have and maintain all rights over the [Easement], not inconsistent with Defendants' right of access to [the five-acre tract]. Plaintiffs' rights include, but are not limited to, the right to cultivate hay within that part of the [Easement] not improved by the gravel drive surface located therein, and the right to have, or refuse to have, a gate located on the [E]asement.

        . . . .

5.      The [Easement] is "exclusive" to the extent Defendants cannot make any use of the property other than as and for access to the [five-acre tract].  The "exclusive" use Defendants may make of the [Easement] is for their ingress and egress.  The "exclusive" nature of the [E]asement does not place any limitation on Plaintiffs' use of their property, except that they may not unreasonably interfere with Defendants' right to use the [Easement] for access to their [five-acre tract.]

6.      . . . . Defendants have no right to have a gate on the [E]asement, except by permission of Plaintiffs.  If a gate is permitted, locking of the gate by any of Defendants may only be with permission of Plaintiffs.  If the gate is locked with permission, then either a key must be provided to Plaintiffs, or a buddy lock properly used.

9

Plaintiffs may not be denied access to their property, either the portion described by [the E]asement, or the remaining portion accessed over the [E]asement.

7. If a gate is permitted on the [Easement], then neither Plaintiffs nor Defendants may cause the other to be locked out of the [Easement]. There must necessarily be cooperation in providing access keys if one lock is used, or a proper buddy lock system which both parties are familiar with.

. . . .

10. The gravel drive constructed by Defendants within the [Easement] is approximately twelve to fifteen feet wide presently, which the evidence suggests, and the Court finds, is currently of sufficient width to serve the purpose of the [Easement] as a means of ingress and egress to the [five-acre tract]. The [E]asement itself is thirty-five feet in width (north/south dimension) and if Defendants need to improve an additional portion of the [E]asement for their reasonable ingress and egress, then they *may* have the right to do so. However, Plaintiffs have the right to use their property, including the [E]asement, as they may choose, including planting hay on the [E]asement, so long as that use does not interfere with Defendants' ingress and egress. Defendants have no right to interfere with Plaintiffs' right of use, including destroying Plaintiffs' cultivation of hay.

(Emphasis added.) Defendants filed a motion to amend the judgment on December 4, 2012. The motion was deemed overruled by the passage of time under Rule 78.06[4] on March 4, 2013, and this appeal timely followed.

**Analysis**

*Point III – The gate dispute*

We first take up Defendants' third point, which contends the trial court erred in "enjoining [Defendants] from 'making any use of the [Easement] that is inconsistent with' its Conclusions of Law that [Plaintiffs] have 'the right to have, or refuse to have, a gate located on the easement,' because the [trial] court" did not use "the proper four-part test to determine whether [Plaintiffs] would have the right to install a gate[.]"

---

[4] The rule reference is to Missouri Court Rules (2013).

"We are required to determine whether there is a justiciable controversy before addressing the merits of the action." ***Rideout v. Koster***, \_\_\_\_ S.W.3d \_\_\_\_, No. SD32736, 2014 WL 2210528 at \*1 (Mo. App. S.D. May 28, 2014). Thus, we may consider whether a justiciable controversy exists even though neither party has raised the issue. *See **Mo. Retired Teachers Found. v. Estes***, 323 S.W.3d 100, 103 n.8 (Mo. App. W.D. 2010) (addressing the matter even though the parties had not raised ripeness as an issue).

"A court cannot render a declaratory judgment unless the petition presents a controversy ripe for judicial determination." ***Mo. Soybean Ass'n***, 102 S.W.3d at 26. Concerning the gate, Plaintiffs' petition sought a declaration that they had "the right to enter their property through the gate installed by Defendants, and Defendants have no right to lock said gate or otherwise deny Plaintiffs access to their property at that point[.]" They also sought a permanent injunction "restraining and enjoining Defendants . . . from preventing Plaintiffs' access to Plaintiffs' real property through the gate installed by Defendants with Plaintiffs' permission[.]"

Here, while the Easement has no provisions regarding a gate, Defendants had installed a gate and Plaintiffs simply requested in their petition that they have access through the gate which was installed "with Plaintiffs' permission[.]" There was evidence to support the finding that Defendants had interfered with that access when Mark locked the gate without providing Plaintiffs a way to get through the gate. This "present[ed] a real, substantial, presently-existing controversy admitting of specific relief[.]" ***Mo. Soybean Ass'n***, 102 S.W.3d at 25. Further, Plaintiffs, as holders of the servient estate, had a "legally protectable interest at stake[.]" *Id.* The issue of Plaintiffs' access through the gate is ripe -- a presently existing controversy began when Mark locked the gate in a way that prevented

11

Plaintiffs from going through it. *See **Schweich***, 408 S.W.3d at 774. And Plaintiffs had no adequate remedy at law to address the continuing nature of this limitation of their use of the gate. Thus, there was a judicial controversy ripe for the trial court's resolution via a judicial declaration that Defendants could not lock the gate so as to limit Plaintiffs access to their property at that location.

The trial court was correct in ruling that neither side "may cause the other to be locked out of the [Easement]." The Easement does not indicate that those holding the servient estate are excluded from this use. Therefore, the Easement is not an exclusive easement. *See **Grider***, 325 S.W.3d at 448. As the owners of the servient tenement, Plaintiffs may "use the easement as long as that use does not substantially interfere with the dominant tenement's reasonable use of the easement." ***Burg***, 346 S.W.3d at 355. Likewise, Defendants, as the owners of the dominant tenement, have "unlimited reasonable use for ingress and egress." ***Maasen***, 133 S.W.3d at 519.

In contrast, the trial court's declarations that the Plaintiffs have "the right to . . . refuse to have . . . a gate located on the [Easement]" and that "Defendants have no right to have a gate on the [E]asement, except by permission of Plaintiffs[,]" though undoubtedly well-intentioned, do not address a presently existing controversy. ***Mo. Soybean Ass'n***, 102 S.W.3d at 25. Plaintiffs did not challenge the existence of the gate, averring in their petition that the gate had been "installed by Defendants with Plaintiffs' permission."

For this reason, we grant Defendants' point to the extent that it challenges the trial court's declarations concerning the gate that were not ripe for decision.

12

*Points I and II – Scope of permanent injunction*

Point I challenges two intertwined portions of the Judgment:  1) the Conclusion of Law that "if Defendants need to improve an additional portion of the [E]asement for their reasonable ingress and egress, then they *may* have the right to do so" (emphasis added); and 2) the language in the Judgment that "permanently enjoin[ed] Defendants, or anyone taking by or through them, from making any use of the [Easement] that is inconsistent with Plaintiffs' use and enjoyment of their property and the Conclusions of Law described herein."

Defendants claim that the Easement is not so limited, and their "deeded right to use the [E]asement for ingress and egress to their property is paramount to any inconsistent use that [Plaintiffs] might make of it."  Point II similarly challenges the language in the Judgment "permanently enjoin[ing] Defendants . . . from making any use of the [Easement] that is inconsistent with Plaintiffs' use and enjoyment of their property and the Conclusions of Law described [therein]."  It also specifically challenges additional conclusions of law regarding the cultivation of hay on the Easement.  Because the resolution of these points involves the same language in the Judgment, we address them together.

Defendants argue on appeal that they "have the absolute right to expand their use for ingress and egress to their property.  The trial court took away that right by incorporating its hedging Conclusions of Law into the injunction."  According to Defendants, the trial court's "ruling means that [their] right to expand their use beyond the existing improved area of the [E]asement is only a possibility and is never assured" and "[u]nder the trial court's view, the servient estate controls the dominant estate--not, as it should be, the other way around."  We believe Defendants' assertion that the dominant estate *controls* the servient estate overstates

13

the matter, but, once again, the Judgment -- perhaps in an attempt to stave off future conflicts -- goes too far in making declarations on matters not yet ripe for judicial determination.

The judgment found (as a matter of fact) that the existing gravel driveway is sufficient to meet Defendants' current needs for ingress and egress, and Defendants have not challenged that finding. That portion of the Judgment addressed an existing condition.

In contrast, Defendants' future ability to expand the existing roadway to reasonably meet some future need is not a "presently existing" controversy. *Schweich*, 408 S.W.3d at 774. A portion of Paragraph 3 of the Conclusions of Law addresses existing conditions by providing that Plaintiffs have "the right to cultivate hay within that part of [the Easement] *not improved by the gravel drive surface located therein*[.]" (Emphasis added.) A portion of Conclusions of Law paragraph 10, however, states:

> The [E]asement itself is thirty-five feet in width (north/south dimension) and if Defendants need to improve an additional portion of the easement for their reasonable ingress and egress, then they *may* have the right to do so. However, Plaintiffs have the right to use their property, including the [E]asement, as they may choose, including planting hay on the [E]asement, so long as that use does not interfere with Defendants' ingress and egress. *Defendants have no right to interfere with Plaintiffs' right of use, including destroying Plaintiffs' cultivation of hay*.

(Emphasis added.) By incorporating all of the trial court's Conclusions of Law, the Judgment purports to prevent Defendants from ever expanding the size of the existing roadway as long as Plaintiffs have hay planted up to its edge. Whether Defendants may expand the width of the existing roadway in the future does not involve a presently-existing dispute. As a result, language indicating that Defendants are *permanently* enjoined from destroying Plaintiffs' cultivation of hay within the Easement is beyond the scope of the trial

14

court's authority as it attempts to resolve a potential future controversy not yet ripe for judicial determination.

To the extent that points II and III challenge those portions of the Judgment's incorporated Conclusions of Law in paragraphs 3 and 10 that attempt to address controversies not presently at issue, they are granted. All other portions of the Judgment not specifically reversed herein are affirmed. The matter is remanded to the trial court, which is directed to enter a new judgment consistent with this opinion. If the relief awarded in that judgment again incorporates the trial court's existing Conclusions of Law, paragraphs 3 and 10 should contain no more than the first sentence of each.

DON E. BURRELL, J. - OPINION AUTHOR

GARY W. LYNCH, J. - CONCURS

MARY W. SHEFFIELD, J. - CONCURS