

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

KALLASH REVOCABLE INTER VIVOS )
TRUST, ) No. ED109154
 )
      Appellant, ) Appeal from the Circuit Court
 ) of Warren County
v. ) Cause No. 19BB-CC00038
 )
SEAN T. FITZSIMMONS ) Honorable Jason H. Lamb
AND STACIE S. FITZSIMMONS, )
 )
      Respondents. ) Filed: April 12, 2022

<u>Introduction</u>

This case highlights the tension between the property rights of parties who hold easements entitling them to particular uses of land they do not own, and the rights of the owners of such land encumbered by such easements. Specifically, this dispute concerns the use of a 70-foot-wide easement (Easement) benefitting a land-locked property owned by the Dennis Robert Kallash Revocable Inter Vivos Trust Indenture dated October 10, 1997 (Appellant), with Dennis Kallash (Kallash) as the trustee. The Easement crosses property owned and occupied by Sean T. Fitzsimmons (Fitzsimmons) and Stacie S. Fitzsimmons (collectively, Respondents), upon which Respondents had built a number of permanent structures. The trial court found the Easement was non-exclusive and was intended for ingress and egress, including the installation of utilities. The trial court

additionally found Appellant had shown reasonable use sufficient to pass over at least half of the Easement and therefore required Respondents to remove some, but not all, of the obstructions in the Easement. We find the trial court's order to remove specific items is unclear, inconsistent, and unsupported by substantial evidence. We further find Appellant failed to submit specific evidence regarding what he reasonably needed for ingress and egress, including utilities. Therefore, we affirm in part and reverse and remand in part.

## Background

In 1987, Kallash acquired a tract of property in Warren County that included both parcels of property at issue here: Appellant's land-locked parcel (the dominant estate) and Respondents' parcel (the servient estate). The servient estate sits between the dominant estate to its west and a country road (Bethel Road) to its east. Kallash sold the servient estate in 1988 to a predecessor in interest of Respondents. In the deed conveying the land in 1988, Kallash reserved the Easement, which is a 70-foot-wide strip of land connecting Kallash's remaining land-locked parcel to Bethel Road, on the servient estate's eastern border. The 1988 deed's legal description specified the Easement's location in detail but did not contain any language stating its purpose or intent regarding exclusivity of use. In 1989, Kallash hired a bulldozer to cut a dirt pathway over the Easement, which he and others used for foot traffic over the years.

Both parcels changed ownership a number of times, and in 1997, the dominant estate was titled to Appellant, Kallash's trust. Respondents obtained title to the servient estate in 1999. In the years that followed, Respondents installed the following items within the 70-foot-wide Easement: a block wall extending completely across the Easement in one location and partially across the Easement in another location, a well and hydrant in the northern half of the Easement, an electrical box with wire underground in the southern half

2

of the Easement, and gravel across the entire 70-foot Easement. Additionally, Respondents had installed a portable shed just north of the Easement border, with the corner of the portable shed extending slightly into the Easement.

In April of 2019, Kallash, as Appellant's trustee, advised Respondents that he intended to utilize the Easement and construct a road. Fitzsimmons indicated he would impede Kallash's planned use of the Easement and threatened to throw nails onto the Easement. Fitzsimmons also trespassed at Kallash's residence on one occasion in the early morning hours, stating that he could go wherever he wanted, whenever he wanted. This caused great alarm to Kallash's wife, Toni Kallash.

On behalf of Appellant, Kallash sought an injunction in the trial court prohibiting Respondents from interfering with his construction of a road over the Easement to provide access to the dominant estate from Bethel Road. Respondents filed a counterclaim for declaratory judgment, requesting that the trial court declare the Easement void, or alternatively, determine its scope. After a bench trial, the trial court granted both declaratory and injunctive relief. Regarding the former, the trial court concluded that the Easement was a valid easement appurtenant,[1] which ran with the dominant estate. The trial court further declared that the Easement was non-exclusive, and its intended use was for ingress and egress, including the installation of utilities.

In its consideration of Appellant's request for injunctive relief, the trial court further found Appellant showed its reasonable use of the Easement includes ingress and egress for roadway and utility traffic sufficient to pass over at least half of the Easement. The trial

---

[1] "An easement appurtenant creates a dominant tenement (the land which benefits from the easement) and a servient tenement (the land which is burdened by the easement)." Murdaugh v. Patterson, 435 S.W.3d 689, 693 (Mo. App. S.D. 2014).

court ordered Respondents to remove the electrical box and gravel within the southern half of the Easement and the block wall in its entirety from both the northern and southern halves of the Easement. The trial court found there was no evidence that the gravel, well, hydrant, and portable shed in the northern half of the easement would substantially interfere with Appellant's reasonable use of the Easement and thus need not be removed. The court further enjoined Fitzsimmons from harassing, threatening, intimidating, or interfering with the construction of improvements or placement of utilities on the Easement. This appeal follows.

Standard of Review

In reviewing a court-tried case, we will affirm the judgment unless it is unsupported by substantial evidence, against the weight of the evidence, or erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court's findings of facts, but we review *de novo* the trial court's application of law to those facts. Adams v. Certain Underwriters at Lloyd's of London, 589 S.W.3d 15, 26 (Mo. App. E.D. 2019).

Discussion

Appellant raises four points on appeal. In Points I and II, Appellant argues that the trial court's injunctive relief is against the weight of the evidence, in that the uncontroverted evidence established that all the items within the Easement substantially interfered with Appellant's reasonable use of the Easement. In Points III and IV, Appellant attacks the trial court's declaratory judgment, but in the argument section of each of those points, Appellant focuses on the trial court's injunctive relief. We address Points III and IV in note 2, *infra*. Neither party disputes the trial court's declaratory conclusions that the 70-foot Easement is valid and that its purpose is for ingress and egress, including the

4

installation of utilities, and such conclusions were in Appellant's favor. We affirm the judgment in this respect.[2]

Simply put, Appellant takes issue on appeal with the fact that the trial court declined to order Respondents to remove the well, hydrant, gravel, and portable shed[3] from the northern half of the Easement. We discuss Appellant's arguments in Points I and II together.

Underlying Appellant's arguments on appeal is the tension in Missouri between the legal rights of those who hold easements on property they do not own (dominant owners) and the legal rights of the owners of that same property (servient owners). "An easement is a non-possessory interest in the real estate of another . . ., [which] confers a right of one person to use the real estate of another for a general or specific purpose." Burg v. Dampier, 346 S.W.3d 343, 353 (Mo. App. W.D. 2011) (citing Farmers Drainage Dist. of Ray Cnty. v. Sinclair Refining Co., 255 S.W.2d 745, 748 (Mo. 1953)). An easement is a property right that can be enforced at law or in equity. Id.; see also Baker v. Walnut Bowls, Inc., 423 S.W.3d 293, 298 (Mo. App. S.D. 2014) (easement is property right that easement

---

[2] In Point III, Appellant asserts Respondents failed to meet their burden to prove that the items they placed in the Easement did not substantially interfere with Appellant's use of the Easement. We see no legal support for this contention. Appellant bore the burden of proof in its action for an injunction seeking removal of the items in the Easement. See Supermarket Merchandising & Supply, Inc. v. Marschuetz, 196 S.W.3d 581, 585 (Mo. App. E.D. 2006) ("[T]he party seeking an injunction bears the burden of proving it is entitled to this relief"). Point denied.

In Point IV, Appellant argues that the case was not ripe for consideration, and thus the trial court's decision regarding the well, hydrant, and gravel in the northern half of the Easement was merely advisory. In doing so, Appellant simply restates arguments regarding the trial court's interpretation of the evidence presented, which we discuss in our analysis of Points I and II. A present controversy clearly existed regarding the scope of the Easement and the specific items Respondents had placed within the Easement. See Mo. Health Care Ass'n v. Attorney General of the State of Mo., 953 S.W.2d 617, 621 (Mo. banc 1997) ("A ripe controversy exists if the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character"). Whether the evidence was sufficient to grant Appellant the relief he sought in removal of all items is a separate question from whether the controversy was sufficiently developed to be ripe for judgment. Point denied.

[3] The parties noted at oral argument that the shed was of relatively minor concern in the dispute.

5

holder does not lose simply due to non-use); State ex rel. Mo. Highways & Transp. Comm'n v. Muslet, 213 S.W.3d 96, 99 (Mo. App. W.D. 2006) (easement is property right that easement holder must be compensated for when taken).

Here, the 1988 deed creating the Easement was specific regarding the Easement's size and location, but the 1988 deed did not articulate the Easement's purpose. In such instances, an easement holder is entitled to "unlimited reasonable use" of the easement consistent with the purpose, as determined by the trial court, for which the easement was created. Maasen v. Shaw, 133 S.W.3d 514, 518-19 (Mo. App. E.D. 2004). Here, the trial court determined that the purpose of the Easement was for ingress and egress, which also includes the installation of utilities within the Easement. Thus, Appellant enjoys unlimited reasonable use for ingress and egress. See id. at 519. Additionally, the nature of the Easement here is non-exclusive, meaning the servient owner may participate with the dominant owner in the use of the easement property. Id. at 518. The issue here is to what extent Respondents may also use Appellant's Easement.

"Generally, the right of use of an easement is paramount to every right of the owner of the fee which is inconsistent with such use." Murdaugh v. Patterson, 435 S.W.3d 689, 693 (Mo. App. S.D. 2014) (quoting Kan. City Power & Light Co. v. Kan. City, 448 S.W.2d 612, 617 (Mo. 1969)) (internal quotation and alteration omitted). However, "an easement's use is limited to the purposes for which it was created." Maasen, 133 S.W.3d at 519. Thus, Appellant retains unlimited reasonable use of the Easement, but only as a right of way. Appellant's reasonable use of the Easement as a right of way is paramount to any inconsistent use by Respondent.

A servient owner "retains the right of full dominion and use of the land affected by the easement . . . in any way that does not substantially interfere with the reasonable use of

the easement by the easement holder." Id. at 520 (quoting Earth City Crescent v. LAGF Assocs.-Mo, 60 S.W.3d 44, 46 (Mo. App. ED. 2001)). Thus, while Appellant does not have the right to place permanent objects in the Easement that are unrelated to utilities or a right of way, Respondent retains that right so long as anything placed by Respondent does not substantially interfere with Appellant's reasonable use of the Easement for ingress and egress. See id. ("The rights to store, park, plant, and construct on the non-roadway portions of the easement remain with the servient owner") (citing cases).

Whether a particular use by a servient owner substantially interferes with the dominant owner's use of an easement is a question of fact. Murdaugh, 435 S.W.3d at 694 (quoting Burg, 346 S.W.3d at 355). "When conducting such an inquiry, our courts will look to whether the servient [owner's] use of the easement made the easement less useful or less convenient." Stoesz v. Wright, 541 S.W.3d 718, 722 (Mo. App. E.D. 2018) (quoting Burg, 346 S.W.3d at 355).

Thus, the question for the trial court here was whether the items Respondents placed in the Easement substantially interfered with Appellant's reasonable use of the Easement for ingress and egress by making the Easement less useful or less convenient to Appellant. See id. at 723. For reasons stated below, we find the trial court's judgment is unclear, inconsistent, and unsupported by substantial evidence in this respect.

The parties submitted exhibits showing that Respondents' property abuts Bethel Road, which runs in a north-south direction on the eastern border of Respondents' property. Respondents' home is located on the eastern portion of their property, near Bethel Road. Respondents constructed a gravel driveway, bordered by a block wall, that extends west from Bethel Road and then turns north toward their home. The Easement extends west from Bethel Road at a slight northern angle, and it overlaps with a large portion of

7

Respondents' gravel driveway. Then, just past the driveway, the Easement takes a turn in a more northerly direction and continues heading northwest, to the west of Respondents' home. The Easement's path then continues much farther to the north, past Respondents' northern boundary property line, then takes a sharp turn and continues southwest, re-enters Respondents' property, and connects with the dominant estate, which abuts Respondents' western property line.

At trial, Kallash testified that he is a Missouri licensed surveyor, and he personally used survey technology to determine the location of the Easement. He described the terrain of the land and the resulting path of the Easement, saying, "you couldn't go straight up the hill cause some spots it's vertical so we call it a switchback," meaning the path takes a sharp turn.[4] Kallash testified that at the location between the Easement and Respondents' home, the Easement "essentially is running along a bluff," which is "very steep." Kallash described the terrain as the Easement runs north, at the switchback:

> [I]t's steep but it ain't as steep as when you first start to go up the hill. We went around the bend there and right past that there's [a] big deep ravine and so that's why we had to switch back and turn . . . ."

Kallash then installed iron pipes down the center of the path, and that became the center line of the Easement, with 35 feet on each side. When asked why Kallash chose to make the Easement 70 feet wide, he responded:

> Because of the terrain of the ground when you build roads, put in water lines, put in telephone lines on flat ground you don't need as much. Being in the business the reason I made it seventy foot, I don't know how big the culverts would have to be. I don't know what the power company's gonna require or the phone company. There's rock up on that hill and so I made it seventy foot . . . so I would have plenty of room to go up there and do whatever I did to access that piece of ground on top of the hill.

---

[4] Elsewhere in the transcript, Kallash refers to this bend in the Easement as a "dogleg."

The items at issue here are located in the first portion of the Easement described above, heading west and slightly north from Bethel Road, before the Easement turns in a more northern direction and before the switchback. Appellant submitted a diagram prepared by Kallash at trial, a portion of which is reproduced below:[5]



As reflected in the diagram, Respondents' gravel driveway overlaps with the Easement, thus the western side of the block wall extends across the full 70 feet of the Easement, and the eastern side of the block wall extends across the northern half of the Easement and

---

[5] The "County Road" appearing on this diagram is Bethel Road.

extends partially across the southern half of the Easement. The well and hydrant are located in the northern half of the Easement, between the driveway and Bethel Road.

During cross-examination, Respondents' attorney questioned Kallash regarding the width of the road he would construct over the Easement. When asked whether he wanted a road wide enough for two vehicles to pass one another, Kallash stated the following:

> Well, I'm looking to get cement trucks up there and everything so I'm not gonna say I'm looking for two cars to pass each other. . . . Then when I make the corner it's gonna have to be a lot wider so I don't know. . . . You're asking how wide. I can't answer that until I build it.

Respondents' attorney questioned Kallash about the width of roads he had built elsewhere, and Kallash respondent, "Every place is different." Respondents' attorney then asked generally how wide a roadway is to allow traffic to pass one another, and Kallash responded, "Thirty to fifty feet. Is that what you want to hear me say?" Kallash also testified generally that all of the items Respondents had placed in the Easement would prohibit him from putting the Easement to his desired use. Specifically, he stated the electrical box, block wall, well, and hydrant would interfere with his construction of a road.[6]

Turning to the trial court's judgment, it is unclear what amount of the 70-foot-wide Easement the court determined Appellant would reasonably need for ingress and egress. The trial court found that Appellant had "shown that its reasonable use includes ingress-egress for roadway and utility traffic sufficient to pass over at least half of the Easement." The trial court then found specifically that the block wall, the electrical box with wire underground, and the gravel in the southern half of the Easement substantially interfered

---

[6] Regarding the corner of the portable shed in the Easement, Kallash stated it "could be" a problem.

with Appellant's reasonable use of the Easement, but that there was no evidence that the well, hydrant, and gravel in the northern half of the Easement would substantially interfere with Appellant's reasonable use of the Easement.

These findings at first glance imply that Appellant could accomplish his purpose for ingress and egress in the southern 35 feet of the Easement. However, the trial court also ordered removal of the block wall in the northern 35 feet of the Easement, finding it would substantially interfere with Appellant's reasonable use of the Easement, even though the well, hydrant, and gravel sit further south than some portions of the block wall in the northern 35 feet of the Easement. Both the block wall and the gravel cover the full 70-foot width of the Easement, with the block wall extending to the Easement's northernmost border in two places. In contrast, the well and hydrant appear to be approximately one third of the way between the Easement's midpoint and its northern border.[7] We do not find evidentiary support in the record for this inconsistency in the trial court's judgment.

Not only is the judgment inconsistent, but it lacks the specificity required to resolve the matter. The trial court found that Appellant needed "at least half" of the Easement and noted Appellant had conceded that a roadway could be constructed within 30 to 50 feet. These statements suggest the judgment leaves room for Appellant to begin work on the road and to discover during the construction project the appropriate width needed within the area the court ordered Respondents to clear,[8] consistent with his testimony that he could

---

[7] According to Kallash's diagram, the well is located 11 feet north of the midpoint in the Easement. There is no evidence regarding the exact placement of the hydrant.

[8] Specifically, this could suggest the trial court intended to allow Appellant up to 46 feet of width (the distance between the southern border of the Easement and the well in the northern half of the Easement) for the portion of the road immediately west of Bethel Road, and up to 70 feet of width for the road to the west of the well and hydrant (except for the small portion where the corner of the shed encroaches on the Easement).

not determine the width of the road until he built it.  However, a number of problems are present with this approach:

1. Notably, there is no testimony or other evidence regarding what additional width, if any, would be required for utilities.  Appellant further did not state with specificity the width needed for the road.

2. There is no definite statement regarding the exact width the trial court found reasonable for Appellant's use, including a road and utilities.

3. There is no specification as to the exact location of the road within the 70-foot Easement beyond what we may imply from the trial court's directive to remove all items in the southern half of the Easement, which is inconsistent with the trial court's order to remove the entire block wall, even the parts of the block wall extending to the northern border of the Easement.[9]

4. To the extent the trial court left room for the width and location of the road to be determined in the future, it is almost certain the parties will end up in court again, given the contentious nature of their previous communication regarding construction of a road in the Easement.

5. Should Kallash begin construction and determine he needs more than half of the Easement width in this location immediately to the west of Bethel Road, or that he needs to place the road in any part of the northern half of the Easement, it is quite possible any claim that his reasonable use for construction of a road and utilities requires such additional space could be barred by the principles of *res judicata*.

---

[9] Parties often file judgments involving real estate with the Recorder of Deeds to ensure notice of their rights to any subsequent purchaser.  Doing so in this case would be practically pointless, as the lack of specificity in this portion of the trial court's judgment fails to provide adequate notice of the rights of the parties regarding the location or width of the road in this particular Easement.

Even in such a case, determining what the trial court's findings actually were for purposes of applying *res judicata* could present problems.

Thus, we do not find substantial evidence to support the trial court's judgment in these respects.

As to the proper remedy on appeal, we find the record lacking in evidence that would enable us to correct the trial court's order of injunctive relief. Appellant argues that the evidence showed all items in the Easement substantially interfered with his reasonable use because he testified that the particular terrain of this land is steep and thus would likely require a road wider than the 30 to 50 feet that generally is sufficient for a road. However, Kallash's testimony regarding the steepness of the ground and the switchback appears to address the Easement in a different location, to the north and west of any of the items Respondents placed in the Easement. Kallash's testimony regarding needing a wider portion of land to make "the corner" could mean: (1) at the switchback, which is not on Respondents' property; (2) at the point just past the block wall where the Easement turns more to the north, which is not the portion of land at issue here; or (3) at the turn onto the Easement from Bethel Road. The fact that the evidence is ambiguous precludes us from instructing the trial court to order removal of all items based on this testimony. Kallash stated very clearly that he could not know the width of the road he would need until he started to build it. The testimony and evidence he offered failed to definitively establish a width he regarded as reasonable for the road in the portion at issue here, let alone what additional width, if any, he needed for the installation of utilities. The record at this point simply does not support removal of all items in the Easement. This does not mean Appellant will not be able to construct a road and use it, as Appellant possesses a valid Easement for ingress and egress, which is undisputed.

13

Instead, in light of Appellant's failure to present specific evidence of the width needed and the trial court's unclear judgment in this respect, we look to this Court's previous decisions in Baum v. Glen Park Properties, 660 S.W.2d 723 (Mo. App. E.D. 1983) (Baum I), and the second appeal of the same dispute, Baum v. Glen Park Properties, 692 S.W.2d 831 (Mo. App. E.D. 1985) (Baum II). In Baum I, the dominant owner held a 40-foot-wide easement for ingress and egress, upon which the servient owner had erected a sign, installed curbing, and planted trees and sod in the easement area. 660 S.W.2d at 724. The trial court had granted the dominant owner's request for an injunction, ordering the servient owner to remove all obstructions from the easement area. Id. at 725. Our Court reversed, concluding the injunction was impermissibly broad. Id. at 726. The evidence had shown that the dominant owner desired to widen the small gravel roadway that existed at the time, but not to what extent, and there was no evidence that the items the servient owner had erected would block access to the farm. Id. Therefore, this Court gave the following instructions for the trial court upon remand:

> [T]he trial court should determine a reasonable width sufficient for road purposes . . . . [The dominant owner] may then determine where the roadway shall be located on the easement, subject to the approval of the trial court. If she fails to specify a location for the roadway, the trial court shall determine the location. [The servient owner] may then use the land in any manner which does not interfere with [the dominant owner's] enjoyment and use of the designated roadway.

Id. at 727.

In Baum II, the matter again reached this Court after the trial court had determined that 20 feet was a sufficient width for the roadway and that the roadway should be located on the northern portion of the easement, contrary to the dominant owner's desire for a 25-foot-wide roadway located on the southern portion of the easement. 692 S.W.2d at 832.

14

The trial court had conducted another hearing on remand, receiving additional evidence from both a farm machinery salesman, who testified regarding the size of various equipment used on the dominant owner's land, and an engineer, who testified that there was no major difference in convenience to the dominant owner between the north or south locations. Id. at 833. Our Court found the judgment was supported by sufficient evidence. Id.

Here, as in Baum I, the record and the judgment are unclear regarding the exact width Appellant reasonably needs to construct a road appropriate for ingress and egress, as well as for utilities. The judgment addresses only what must be removed, without specifying the exact width or location of Appellant's road, which admittedly was a difficult task given the limited evidence Appellant presented. We cannot tell from the record whether the judgment is too broad or too narrow; it is simply, at this point, unclear and inconsistent. At the same time, neither Appellant nor Respondent dispute the trial court's order to remove items in the southern half of the Easement and the block wall in the northern half of the Easement. Thus, we reverse the judgment of the trial court as it relates to its findings that the well, hydrant, and gravel in the northern half of the Easement do not substantially interfere with Appellant's use of the Easement, as they are unsupported by substantial evidence. Following Baum I, we direct the trial court upon remand to take further evidence and to make specific findings regarding the exact width of the road and its location.[10] Further, the parties should present more specific evidence regarding the

_____

[10] While a bright-line approach preventing any obstructions in an easement is much easier for trial courts to enforce, only the Missouri Supreme Court or legislature can overturn over a century of Missouri legal precedent regarding easements. Cf. Davis v. Watson, 89 Mo. App. 15, 30 (Mo. App. 1901) (utilizing standard of reasonable necessity: holding, where parties contracted for easement holder to have right of way on servient estate's 80-acre tract, but contract did not specify width or location of right of way, the deed "will be construed to be a grant of so much as is reasonably necessary for the purpose for which it is granted"), cited in DiPasco v. Prosser, 274 S.W.2d 279 (Mo. 1954) (noting standard). Until such time as a change of

15

necessary width needed for a road and utilities, which could include road contractors, engineers, or other experts. Only then can the trial court make specific findings regarding Appellant's reasonable use and determine whether the remaining items in the northern half of the Easement must be removed.

That said, we reiterate that the Easement is a full 70 feet wide, and Appellant's rights to unlimited reasonable use of the Easement for ingress and egress are paramount to Respondents' rights that are inconsistent with such use. Murdaugh, 435 S.W.3d at 693. Any use that Respondents make of the Easement that substantially interferes with Appellant's reasonable use by making the Easement less useful or less convenient is unlawful. See Stoesz, 541 S.W.3d at 722. Appellant may choose the width and location of the road, subject to approval by the trial court. See Baum I, 660 S.W.2d at 727. Points I and II granted.

## Conclusion

The trial court's declaratory relief, consisting of its conclusions that the Easement is valid, non-exclusive, and intended for the purpose of ingress and egress including utilities, is supported by substantial evidence and is undisputed on appeal. However, the trial court's injunctive relief regarding removal of obstructions in the Easement is unclear, inconsistent, and unsupported by substantial evidence. Thus, we reverse the trial court's findings that the remaining items in the northern half of the Easement need not be removed and remand for proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

---

law occurs regarding easements in Missouri, drafters of easements could avoid the problems that arose here by specifically prohibiting permanent items in the descriptions of their easements.

_____
Gary M. Gaertner, Jr., P.J.

James M. Dowd, J., concurs;
Thomas C. Clark II, J., concurs in a separate opinion.



# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

KALLASH REVOCABLE INTER VIVOS )
TRUST INDENTURE DATED OCTOBER 10, )
1997, )    No. ED109154
)
    Appellant, )    Appeal from the Circuit Court
)    of Warren County
    vs. )    Cause No. 19BB-CC00038
)
SEAN T. FITZSIMMONS )
AND STACIE S. FITZSIMMONS, )    Honorable Jason H. Lamb
)
    Respondents. )    Filed:  April 12, 2022

## CONCURRING OPINION

I concur in the majority's disposition on appeal but write separately to offer my own analysis of this case.

This case is largely controlled by its unusual facts and the limited scope of the questions raised on appeal. We reverse the trial court's injunction judgment because the requirement to remove the block wall from the northern 35 feet of the easement is not supported by the evidence or consistent with the trial court's other conclusions.

On remand, the trial court will need to make a specific finding regarding the needed width of the roadway. This will require examination of the factual record and credibility determinations, which are the domain of the circuit court. *See Lobo Painting, Inc. v. Lamb Const. Co.*, 231 S.W.3d 256, 260 (Mo. App. E.D. 2007) (remanding so that the circuit court, in its role as trier of fact, may make necessary factual findings and credibility determinations). But there is evidence in

the record addressing this topic. The most significant is Kallash's testimony that generally a road allowing two-way traffic is "[t]hirty to fifty feet" wide. The record also contains substantial evidence in the form of diagrams and exhibits. For example, Exhibit 15 is a scaled computer drawing depicting the entire area, including the location of the relevant items and the width of the adjoining road. These exhibits may be relied upon by the trial court to support its findings.[1]

Additionally, Kallash testified that he did not know how wide his road would be. "You're asking how wide. I can't answer that until I build it." Applying our standard of review, we must infer that the trial court concluded that this statement by Kallash lacked credibility. *See*, *e.g.*, *Dickerson v. Dickerson*, 580 S.W.3d 98, 106 (Mo. App. E.D. 2019) ("[W]e must presume the trial court . . . found facts 'in accordance with the result reached.'"); Rule 73.01(c). If the trial court rested its decision on this testimony, the necessary result would have been judgment in Respondents' favor because of Appellant's failure to meet its burden of proof under *Baum I*, which requires evidence and a finding as to the width of the roadway.

The trial court will also have to determine the significance of its declaratory judgment, which is final and affirmed by this court, in any further proceedings. Our court does not reverse the declaratory judgment because of the limited nature of Appellant's points on appeal. That judgment declares the scope of the easement, including the physical scope and extent of its reasonable use, as requested by Respondents in their counterclaim. *See Maune v. Beste*, 356 S.W.3d 225, 229 (Mo. App. E.D. 2011) (scope of easement includes its physical extent); *Reinbott v. Tidwell*, 191 S.W.3d 102, 109 (Mo. App. S.D. 2006) (same). Because the declaratory

---

[1] *See Wykle v. Colombo*, 457 S.W.2d 695, 699 (Mo. 1970) (deferring to trial judge's factual findings in real property dispute "because of his opportunity to follow descriptions on and references to" visual exhibits and because he "could see where the witness was pointing or indicating and, of course, understand such testimony and evidence"); *State v. Masaa*, 410 S.W.3d 645, 656 (Mo. App. S.D. 2013) (scaled exhibit was equivalent to testimony describing the "location and position" of items depicted).

2

judgment is final it may limit any potential retrial and preclude determinations deviating from those made in that final judgment.

Like any court, we render this decision after applying the law to the evidence contained within the record. And following today's decision, this court embraces and extends the holdings in *Baum I* and *II*, fully recognizing these are decisions of this court and we are bound to apply them. *Baum I* and *II* seem to place a principal obligation on the easement holder to persuade the fact finder that easement restrictions are justified when impediments surface on the subservient estate. Conversely, other states reduce the easement holder's evidentiary burden.[2] Here, the limitations of the briefing and factual record prevent a more thoughtful discussion of an alternative rule. That discussion might, through appropriate processes, potentially ease the burden of the easement holder under *Baum*.

For these reasons, I concur in the disposition only.

_____
Thomas C. Clark, II, Judge

---

[2] *See, e.g., Johnson v. Highway 101 Investments, LLC,* 319 P.3d 485, 487-488 (Idaho 2014) (holding that servient owner could not erect sign within easement boundaries; adopting this rule because it "provides a clear, bright-line standard" and "will avoid costly and time-consuming litigation concerning whether the servient estate owner's use of the easement area is reasonable"); *Pizzarelle v. Dempsey,* 526 S.E.2d 260, 265-266 (Va. 2000) (servient owner interfered with easement for ingress and egress by planting trees and erecting fence inside easement area, rendering portion of easement unusable); *Weatherholt v. Weatherholt,* 769 S.E.2d 872, 878 (W. Va. 2015) (observing that easement holder "has the right to the convenient use of the entire width of the right-of-way"); *Halbrooks v. Durieux,* 2014 WL 2999580, *10 n.3 (Tenn. Ct. App. June 30, 2014).